COMMONWEALTH of Pennsylvania, Appellee

v.

Mark FABIAN, Appellant.

Superior Court of Pennsylvania.

Argued Dec. 4, 2012.
Filed Jan. 11, 2013.

Suzanne M. Swan, Public Defender and Jessica L. Herndon, Public Defender, Pittsburgh, for appellant.

Michael W. Streily, Deputy District Attorney, Amy E. Constantine, Assistant

District Attorney, Pittsburgh, for Commonwealth, appellee.

BEFORE: PANELLA, ALLEN, and STRASSBURGER,* JJ.

OPINION BY ALLEN, J.:

Mark Fabian ("Appellant") appeals from the judgment of sentence imposed after he was convicted of involuntary manslaughter and four counts of recklessly endangering another person.[1] We affirm.

The trial court recounted the factual background as follows:

September 3rd, 2008 was a ride from school that 10 year old Tyler and 6 year old Walter will never forget. Both boys are special needs children. They attend a special school in the City of Pittsburgh. They get picked up at their home in the morning and get dropped off in the afternoon. Except on this day, their afternoon ride home was anything but normal.

A–1 Van Service is a company that provides transportation services. One of its services is to "haul" students to and from school. One way it accomplishes this goal is by using passenger vans like a Dodge Caravan. It employs a driver. The driver works a split shift. The driver does the pick-up and delivery in the morning, has a few hours off during the mid-day but returns in the afternoon to do the drop-off at the student's home.

Jennifer Logan did not get her normal van that morning of September 3rd, 2008. Something was wrong with it. Her boss told her to take Van # 9. Ms. Logan climbed into Van # 9 and began her morning trip. She felt something was wrong. The van shook and shimmied when she applied the brakes. At her first stop, Walter's house, she commented to Walter's mom that something

was wrong. It was suggested that she take it back to the garage and get it checked out. At her second stop, Tyler's house, she repeated the comments. Tyler's mom and Tyler's aide, Colleen Visconti, both told the driver to complain about it when she got back to the garage. After traversing the hills to the school and dropping off Walter, Tyler and Tyler's aide, Ms. Logan returned to the A–1 garage. She spoke with her boss, Cori Skellie. She complained. There was something funny about Van # 9, [Ms. Logan] said. They argued. Finally, Ms. Logan is told a mechanic will look at it.

While Ms. Logan is waiting for her mother to come pick her up at work, she sees [Appellant], a mechanic with A–1, get in Van # 9. [Appellant] drives it in the parking lot and mashes [sic] on the brakes 3 times. He drives it inside the garage. Van # 9 is put on the floor lift. A–1 employees saw some of the wheels [pulled] off the van. Not a single one saw the drums of the brakes removed.

After her mid-day break, Ms. Logan returns to complete her work shift. She is told Van # 9 is fixed. She takes Van # 9. She makes the 15–20 minute ride to school. School personnel bring Walter and Tyler out to the van. Walter sits in the very back. He is buckled in. Tyler is buckled into a car seat on the passenger side on the middle row of seats. Tyler's aide, Miss Colleen, is directly behind the driver and to the left of Tyler. The van leaves the school.

A few blocks away is a narrow, very steep street with two-way traffic. Ms. Logan turns down the street. She picks up speed. She puts her foot on the brake. It goes to the floor. There is no

* Retired Senior Judge assigned to the Superior Court.

1.  18 Pa.C.S.A §§ 2504 and 2705, respectively.

brake. Her speed increases. She sees grass on the opposite side of the street. Maybe this will slow me down is her thinking. It does not. She hits a tree. She thought all four of them were dead. She was part right. Tyler's aid, [Miss Colleen], while alive at the scene, died later at the hospital. Ms. Logan was extracted from the wreckage and from her perch on someone's lawn, she kept uttering, "I told them something was wrong with that van."

A homicide investigation ensues. Observations at the scene showed no brakes were applied or there were no brakes working. A trail of brake fluid on the steep street came from Van # 9. A full inspection of Van # 9 was very revealing. As a baseline of sorts, the inspectors used the service work order completed by an A–1 Service mechanic, [Appellant]. [Appellant] completed this form and said he pulled all 4 tires, brakes are fine, adjust up rears and noted measurements of brakes both the front and back.

The measurements of the brakes were different. Law enforcement measured the thickness of the friction material that is pressed onto the rear brake drum at 7/32nds of an inch. [Appellant's] measurement was 4/32nds of an inch. The 3/32nd of an inch difference is significant to those in that field and is something that would be readily observable to a person trained in that field.

The rear brakes were not adjusted according to government witnesses. To make an adjustment, there is a wheel, of sorts, called a "star wheel["], that with a special brake tool or a regular screw driver, the wheel is turned a few clicks and that brings the friction material closer to the drum. When the "star wheel" is adjusted, it exposes the threads of the screw. The exposed threads would look fresh, shiny and new because it had not previously been exposed to all the brake dust that is normally generated inside the brake drum. Clean, new threads—a telltale sign that the brakes had recently been adjusted—were not present.

All four wheels were not pulled. The rear drums were difficult to get off. While one was easier than the other, the more difficult one had to be beat with a hammer. Had the drums been pulled just ten miles earlier [ (the distance Ms. Logan had driven the van prior to the accident) ], the drums would have been removed with far greater ease. Another indication that the drums were not pulled was the large amount of dust inside. After the struggle to remove the drums, the bowl of the drum [was tilted] up and both were full of dust and debris. The dust, a normal byproduct of braking action, was far in excess of the amount one would see after just 10 miles of travel.

Had the rear drums been removed two obvious defects would have been noticed. The left rear cylinder was frozen. It was totally non-operational. From an inspection viewpoint, the left rear brake would be deemed defective. The right rear [drum] had a 1–inch crack in the shoe. The crack is the result of heat and stress. Given the problems on the left side rear (non-operational cylinder), some overcompensation was taking place on the right side which contributed to the crack in the shoe. The conclusion of government inspectors and testifying experts was that Van # 9 should not have been allowed to leave the garage with those brake system defects.

Armed with this knowledge, the focus of the investigation shifted to the company, A–1 Service, and in particular, its mechanic, [Appellant]. Eight days after

the crash, two City of Pittsburgh police officers interview[ed] [Appellant] at his home. [Appellant] said he was assigned to look at Van # 9. He took it for a test ride.. He pulled all 4 wheels. [Appellant] measured the brake pads and shoe[s] and inspected all brake components. He also told these investigators that he adjusted the rear brakes, that he used brake cleaner on the rear brakes, inspected the shoes and pistons, and concluded that all components were dry with no leakage. [Appellant] did not check the master cylinder because during his test drive, the brakes felt fine. [He] also added that the brakes had a shiny surface, there were no cracks. In essence, [Appellant] said the brakes were in good shape.

[Appellant] was then confronted with photographs and their inspection findings of Van # 9. As for the crack in the rear shoe, his explanation was that it must have happened after he looked at it. He had no explanation for discrepancies between their measurements and his. He said he never opened the hood[,] therefore he did not see the cap on the master cylinder not in its normal location. [Appellant] had no explanation for the large amount of dust.

Five months later, on February 25, 2009, [Appellant] was accused of involuntary manslaughter for causing the death of Colleen Visconti as a direct result of him not repairing Van # 9 in a reckless or grossly negligent manner [sic]. He was also charged with 4 counts of recklessly endangering another person. Those people were the van's driver, the two students and the one student's aide.

Trial Court Opinion, 1/30/12, 2–5 (citation and footnotes omitted).

On January 23, 2010, a jury convicted Appellant of involuntary manslaughter and four counts of recklessly endangering an-

other person. The trial court also found Appellant guilty of the summary offense of unlawful activities. 75 Pa.C.S. § 4107(b)(2). On December 1, 2010, the trial court sentenced him to an aggregate of two and one-half to five years of incarceration, followed by a five-year probationary term. The trial court denied Appellant's timely filed post-sentence motion. This appeal followed. Both Appellant and the trial court have complied with Pa. R.A.P. 1925.

Appellant raises the following issues for our review:

I. Is evidence sufficient to convict of involuntary manslaughter when the Commonwealth fails to prove the direct or substantial cause of the vehicle accident that led to the [victim's] death?

II. Is evidence sufficient to convict of involuntary manslaughter when the Commonwealth fails to prove that [Appellant] acted recklessly or in a grossly negligent manner?

III. Is evidence sufficient to convict of reckless endangerment when the Commonwealth fails to prove that [Appellant] acted with recklessness that placed another in danger of death or serious bodily injury?

Appellant's Brief at 6 (capitalization removed).

■■■ All three of Appellant's issues challenge the sufficiency of the evidence supporting his convictions. Our standard of review is well settled:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the

above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [finder] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Jones*, 886 A.2d 689, 704 (Pa.Super.2005), *appeal denied*, 587 Pa. 686, 897 A.2d 452 (2006) (citations omitted).

■ The crime of involuntary manslaughter is defined as follows:

(a) **General rule.**—A person is guilty of involuntary manslaughter when as a direct result of the doing of an unlawful act in a reckless or grossly negligent manner, or the doing of a lawful act in a reckless or grossly negligent manner, he causes the death of another person.

18 Pa.C.S.A. § 2504(a). Stated differently, "involuntary manslaughter requires 1) a mental state of either recklessness or gross negligence[,] and 2) a causal nexus between the conduct of the accused and the death of the victim." *Commonwealth v. McCloskey*, 835 A.2d 801, 806 (Pa.Super.2003).

■ In his first issue, Appellant argues that his conviction cannot stand because the Commonwealth failed to present any evidence of causation. According to Appellant:

The Commonwealth presented a theory of causation that because [Appellant] worked on the vehicle brakes shortly before the accident occurred, it must have been [Appellant's] actions that caused the accident. This theory is premised on the faulty logic of assuming causality from temporal sequence. Just because [Appellant] inspected and/or repaired the brakes prior to the accident is simply not sufficient evidence to prove that he somehow caused the accident or that he somehow could have prevented it. This is nothing more than conjecture that 1) the brakes were the mechanical cause of the accident and 2) that [Appellant] somehow could have prevented this accident. Under these circumstances, the fact-finder's conclusion that [Appellant's] brake repairs, or alleged lack thereof, directly caused the fatal accident is based on pure speculation. In fact, the Commonwealth experts testified that even though this front wheel drive vehicle would not have passed inspection, the brakes still functioned and the vehicle would have stopped.

The Commonwealth makes much of the fact that [Appellant] did not repair the brakes to the level that would pass inspection and the Commonwealth is attempting to bootstrap this fact into an inference that [Appellant] either caused the accident or somehow could have prevented the accident. Causation does not necessarily flow from the fact that the vehicle would not pass inspection. The fact remains that the Commonwealth never presented evidence regarding the actual cause of the accident, whether it was brake related or due to some other

152 ■

type of mechanical problem, or whether it was some factor that [Appellant] could have even controlled.

Appellant's Brief at 15. We disagree.

■ "It is undisputed that the Commonwealth must prove a *direct* causal relationship between the acts of a defendant and the victim's death." *Commonwealth v. Long,* 425 Pa.Super. 170, 624 A.2d 200, 203 (1993). "Criminal responsibility is properly assessed against one whose conduct was a direct and substantial factor producing the death." *Commonwealth v. McCloskey,* 835 A.2d 801, 807 (Pa.Super.2003) (citing *Commonwealth v. Nicotra,* 425 Pa.Super. 600, 625 A.2d 1259, 1260 (1993)). "This is true even though 'other factors combined with that conduct to achieve the result.'" *Id.* Additionally:

> In order to impose criminal liability, causation must be direct and substantial. Defendants should not be exposed to a loss of liberty based on the tort standard which only provides that the event giving rise to the injury is a substantial factor. Although typically the tort concept refers to only substantial and not to direct and substantial as in the criminal context, the additional language in the criminal law does not provide much guidance. Therefore, criminal causation has come to involve a case-by-case social determination; i.e., is it just or fair under the facts of the case to expose the defendant to criminal sanctions. In other words, was the defendant's conduct so directly and substantially linked to the actual result as to give rise to imposition of criminal liability or was the actual result so remote and attenuated that it would be unfair to hold the defendant responsible for it?

*Commonwealth v. Rementer,* 410 Pa.Super. 9, 598 A.2d 1300, 1304–05 (1991). "In seeking to define the requirement that a criminal defendant's conduct be a direct factor in the death of another, the courts of this Commonwealth have held that 'so long as the defendant's conducted started the chain of causation which led to the victim's death, criminal responsibility for the crime of homicide may properly be found.'" *McCloskey,* 835 A.2d at 808 (citing *Nicotra, supra* ).

■ We are not persuaded by Appellant's claim that the evidence was insufficient to convict him of involuntary manslaughter because the Commonwealth never established the actual cause of the accident. "[I]t has never been the law of this Commonwealth that criminal responsibility must be confined to a sole or immediate cause of death." *Commonwealth v. Skufca,* 457 Pa. 124, 321 A.2d 889, 894 (1974) (citation omitted). "Criminal responsibility is properly assessed against one whose conduct was a direct and substantial factor in producing the death even though other factors combined with that conduct to achieve the result." *Id.*

In this case, trial testimony established that Appellant was charged with the duty of maintaining the safety of the vehicles used by the transportation company, and that his actions or inactions "started the chain of causation which led to the victim's death[.]" *See McCloskey,* 835 A.2d at 808 (affirming involuntary manslaughter conviction where teenager died in an automobile accident after leaving an underage drinking party that the defendant knowingly permitted her minor daughter to host); *Commonwealth v. Keysock,* 236 Pa.Super. 474, 345 A.2d 767, 773–74 (1975) (upholding involuntary manslaughter conviction for driver after vehicle on which he put bald tires killed another driver after a traffic accident). It was reasonable for the jury to infer that, had Appellant properly performed his duties, the accident would not have occurred.

The cases relied upon by Appellant in support of his sufficiency challenge are inapposite, as they involve factual circumstances where the defendant's conduct was more remote and attenuated. *See, e.g., Commonwealth v. Moyer,* 436 Pa.Super. 442, 648 A.2d 42, 46 (1994) (holding Commonwealth did not establish a *prima facie* case of involuntary manslaughter after a jet ski crashed into defendant's boat because there was no evidence that the defendant could have avoided the accident); *Commonwealth v. Colvin,* 340 Pa.Super. 278, 489 A.2d 1378, 1380–81 (1985) (explaining conduct of defendant in throwing rock at house was insufficient to establish causation to support involuntary manslaughter conviction; death of occupant upon hearing of defendant's act was too remote and attenuated); *Commonwealth v. Sisca,* 245 Pa.Super. 125, 369 A.2d 325, 328 (1976) (reversing involuntary manslaughter conviction where evidence showed that defendant, who was driving five miles over the posted speed limit, hit a child bicyclist who entered the roadway from a driveway which was at least partially obstructed from view); *Commonwealth v. Kominsky,* 240 Pa.Super. 532, 361 A.2d 794, 799 (1976) (affirming trial court's order which granted an arrest of judgment following involuntary manslaughter conviction, where Commonwealth failed to establish that the defendant's act of leaving the victim to recover from a state of apparent intoxication was a direct and substantial cause of the victim's death from a drug overdose).

Appellant's claim that the Commonwealth improperly relied upon *"post hoc, ergo propter hoc,"* (after this therefore because of this) reasoning to support his involuntary manslaughter conviction is also meritless. *See* Appellant's Brief at 19. "[T]his rationale is well known as false logic, an example of the fallacy of arguing from the temporal sequence to cause and effect relationship." *In re K.J.V.,* 939 A.2d 426, 429 (Pa.Super.2007) (citation omitted). Contrary to Appellant's claim, the evidence produced at trial did not simply ask the jury to speculate as to the cause of the accident or Appellant's role in it. Rather, given the Commonwealth's evidence at trial, including the driver's complaint about the vehicle's brakes, and Appellant's subsequent "inspection," the jury could reasonably conclude that the van crashed as a result of Appellant's failure to insure the van's safety. As the trial court stated, "[c]ouple a school van with brakes that could fail at any moment with the topography of Allegheny County, and you have a death warrant for any unfortunate occupant. Colleen Visconti's death was the direct result of [Appellant's] conduct." Trial Court Opinion, 1/30/12, at 6. Thus, Appellant's first sufficiency challenge fails.

In his second issue, Appellant claims that the Commonwealth "did not prove that [Appellant] acted recklessly in his repair or inspection of the van" and hence the evidence was insufficient to support his involuntary manslaughter conviction. Appellant's Brief at 15. According to Appellant:

In order to prove that [he] acted recklessly in repairing the van brakes, the Commonwealth had to establish that he consciously disregarded a substantial and unjustifiable risk that someone in the van would die as a result. [Appellant] must have foreseen the danger that the brakes would completely fail. The Commonwealth failed to prove what mechanical problem caused the accident, so one can only speculate that whatever caused the accident was foreseeable to [Appellant]. If the Commonwealth cannot even prove the mechanical cause of the accident, the Commonwealth cannot prove that [Appellant] acted recklessly in causing it or failing to prevent it.

Also, [Appellant] tried to remedy any brake problems with the van and any problems he did not remedy would not have prevented the brakes from stopping the van. Moreover, since no one could testify when these brake defects occurred, the rear cylinder seizure or rear shoe crack may have occurred during the accident, after [Appellant] released the vehicle. These factors show that [Appellant] was not reckless in his inspection and repair of the van.

Appellant's Brief at 15–16. Appellant further asserts that "[a]t best, the evidence showed that [he] acted with ordinary negligence or inadvertence." *Id.* at 28. We disagree.

As noted above, to support an involuntary manslaughter conviction, the Commonwealth must prove that the defendant acted in a "reckless or grossly negligent manner," and that that act caused the death of another person. 18 Pa.C.S.A. § 2504(a). Our Supreme Court has construed the terms " 'recklessly' and 'grossly negligent' as defining an equivalent state of mind for purposes of the involuntary manslaughter statute." *Commonwealth v. Huggins,* 575 Pa. 395, 836 A.2d 862, 868 (2003). The Crimes Code's general definition of the term "recklessly," is as follows:

A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustified risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.

*Id.;* 18 Pa.C.S.A. § 305(b)(3).

The trial court concluded that the Commonwealth sufficiently proved that Appellant acted "recklessly." The trial court explained:

With this legal standard fresh in our mind, there is no hesitation with this Court that the government's evidence was sufficient to sustain the jury's guilt determination. The government's evidence showed [Appellant] did nothing more than take Van # 9 for a short test ride and put it on the lift inside the garage. Faced with a complaint that there was something wrong with the vehicle when the brakes were applied, a reasonable person would have taken further measures to investigate. [Appellant] took none of the steps a reasonable person would have taken to reduce the risk. *Huggins, supra,* 836 A.2d at 869 ("the danger also may increase if other safety measures are ignored, [such as] vehicle maintenance. . . ."). He did not remove the rear brake drums. Had he done so, he would have seen the cracked brake shoe, the failed cylinder and the great buildup of dust and debris. Not a single witness who had particularized knowledge of the topic said the van was safe to drive. All said it should not have left the garage. [Appellant's] failure to take those reasonable measures was criminally negligent.

Trial Court Opinion, 1/30/12, at 7.

Our review of the record supports this conclusion. As noted above, to support Appellant's involuntary manslaughter conviction, the Commonwealth was not required to prove the immediate cause of the accident. *See infra.* Thus, Appellant's attempt to conflate this argument to support his claim regarding the Commonwealth's failure to establish the requisite *mens rea* is meritless. Moreover, although Appellant claims that the failed cylinder and cracked brake shoe may have occurred after the accident occurred, the jury, as

fact-finder, was free to believe all, some or none of the evidence. *Jones, supra.*

We disagree with Appellant's assertion that our decision in *In re K.J.V., supra,* "provides guidance on this issue." Appellant's Brief at 31. In *K.J.V.,* this Court found insufficient evidence to support an adjudication of delinquency for simple assault where a student exiting a school door to catch her bus knocked down a special needs student's service dog, striking the child in the back. Here, the facts did not establish that Appellant "acted impulsively" or was "at least inconsiderate, at worst callous." *K.J.V.,* 939 A.2d at 430. In *Huggins, supra,* our Supreme Court found that the Commonwealth established a *prima facie* case to support an involuntary manslaughter charge where the defendant, who was driving a van filled over its capacity with mostly children, drove at an excessive speed and fell asleep at the wheel. According to the high court:

> Viewed in their totality, the circumstances here reveal a pattern of conscious disregard for circumstances that placed the lives of these children in increasing danger. We are also satisfied that the Commonwealth proved that the circumstances here revealed a disregard of duty and risk which would warrant a jury in finding a "gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation."

*Huggins,* 836 A.2d at 871. The circumstances surrounding Appellant's conduct in this case, representing that Van # 9 was safe to drive after he inspected the vehicle, demonstrate a similar disregard of duty by Appellant. When the totality of the evidence introduced at trial is properly viewed in the light most favorable to the Commonwealth as verdict-winner; *Jones, supra,* the Commonwealth presented sufficient evidence that Appellant acted reck-

lessly when inspecting Van # 9, and that his recklessness was a direct cause of the victim's death. Thus, we affirm Appellant's involuntary manslaughter conviction.

In his third and final issue, Appellant asserts that the Commonwealth failed to establish that he "acted with the *mens rea* of recklessness to support convictions for recklessly endangering another person." Appellant's Brief at 34. According to Appellant, "[t]he Commonwealth theorized during trial that [he] did not perform the actions on the van that he said he performed ... However, this does not prove that [Appellant] consciously disregarded a risk." Appellant's Brief at 34.

"A person commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa.C.S.A. § 2705. The *mens rea* for the crime of recklessly endangering another person is a "conscious disregard of a known risk of death or great bodily injury to another person." *Commonwealth v. Klein,* 795 A.2d 424, 428 (Pa.Super.2002) (citation omitted). Here, the trial court found that the Commonwealth established this element of reckless endangerment in that: "[Appellant] consciously disregarded an interior check of the van's brake system. He never 'pulled the wheels.' This precipitated an unbroken chain of events that placed all 4 occupants of that van in the danger zone of death or serious injury." Trial Court Opinion, 1/30/12, at 8.

Our review of the record supports the trial court's conclusion. In support of his claim to the contrary, Appellant once again relies upon our decision in *K.J.V., supra,* and makes the same argument that we rejected when determining that Appellant acted recklessly to support his voluntary manslaughter conviction.

In addition, Appellant asserts that this Court's recent decision in *Commonwealth v. Hutchins*, 42 A.3d 302 (Pa.Super.2012), *appeal denied, Commonwealth v. Hutchins*, —— Pa. ——, 56 A.3d 396, 2012 Pa LEXIS 2554 (Pa., November 1, 2012), supports his claim. In *Hutchins*, the defendant, while under the influence of marijuana, drove his three young daughters in a vehicle, and an accident occurred where the daughters and another driver were injured. This Court reversed the defendant's recklessly endangering another person convictions. We first noted that, "driving under the influence of intoxicating substances does not create legal recklessness *per se*, but must be accompanied with other tangible indicia of unsafe driving to a degree that creates a substantial risk of injury which is consciously disregarded." *Hutchins*, 42 A.3d at 311 (citation omitted). Because there was no other evidence or reckless driving or conduct, this Court reversed the defendant's convictions.

Our holding in *Hutchins* is inapplicable to the instant case. Appellant's conduct with regard to the van's brakes was sufficient to establish reckless endangerment to the victims in this case. Because the jury could reasonably conclude that Appellant knew the van would be used to transport passengers, the jury could determine that Appellant acted with the requisite *mens rea*. Thus, when properly viewed in the light most favorable to the Commonwealth as verdict-winner, the evidence was sufficient to support Appellant's recklessly endangering another person convictions.

Judgment of sentence affirmed.