J-A13012-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :  IN THE SUPERIOR COURT OF
                                            :  PENNSYLVANIA
                                            :
          v.                              :
                                            :
                                            :
PAUL WOODLYN, III             :
                                            :
          Appellant              :  No. 548 EDA 2018

Appeal from the Judgment of Sentence January 19, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0000956-2017

BEFORE:  SHOGAN, J., NICHOLS, J., and STRASSBURGER*, J.

MEMORANDUM BY SHOGAN, J.:  **FILED AUGUST 28, 2019**

Appellant, Paul Woodlyn, III, appeals from the judgment of sentence entered January 19, 2018, in the Philadelphia County Court of Common Pleas. We affirm.

The trial court summarized the factual and procedural history of this case as follows:

> [A]round 3:15 in the afternoon of November 18, 2016, Jayanna Powell, age eight, her two brothers and her sister were walking home from school when they came to the intersection of 63rd Street and Lansdowne Avenue in West Philadelphia. As the children crossed the intersection, [Appellant], driving a Nissan automobile, veered around a stopped car and struck Jayanna, knocking her onto the hood of his car, then hitting the windshield, then into the air, where she finally landed by a tree. [Appellant] was speeding prior to hitting the children, and he never slowed down, attempted to stop or even apply the brakes. Jayanna was hit so hard, the impact knocked her out of her shoes. The car also scraped the knee of Jayanna's brother, Hassan. Jayanna received injuries to her head, spine, liver and heart, which proved fatal within two hours. The cause of death was the blunt impact trauma

_____
\* Retired Senior Judge assigned to the Superior Court.

from the automobile. [Appellant] kept driving, despite seeing this child land on his windshield. [Appellant] parked the vehicle for a while, then picked up his girlfriend, Jasmine Glover. When they stopped at a Wawa, a tow truck driver noticed the heavy damage to the vehicle and recommended A&P Auto Body Shop in Exton, Pennsylvania for repairs. [Appellant] told the repair shop that he had hit a deer. After learning of the fatal hit and run from the television news, the body shop owner called the police, who forensically matched the car to the accident. [Appellant] confessed to hitting the child and leaving the scene.

Trial Court Opinion, 8/15/18, at 3 (internal citations omitted).

[Appellant] was arrested on December 1, 2016, and charged with homicide by vehicle, accidents involving death or personal injury, involuntary manslaughter and recklessly endangering another person. [Appellant] was bound over on all charges following a preliminary hearing on February 1, 2017. When arraigned before a jury, [Appellant] pled guilty to accidents involving death or personal injury (hit and run)[1] but not guilty to the remaining charges. A jury was empaneled from October 30th through November 3, 2017, after which [Appellant] was convicted of involuntary manslaughter, and recklessly endangering another person.[2] The jury found [Appellant] not guilty of homicide by vehicle. On January 19, 2018, [Appellant] was sentenced to three to six years' incarceration to be followed by four years' probation for accidents involving death or personal injury, a consecutive one to two years' imprisonment followed by five years' probation for involuntary manslaughter and six to twelve months consecutive incarceration for recklessly endangering another person for an aggregate sentence of four and one-half to nine years' incarceration with seven years' probation. A timely appeal was made to the Superior Court of Pennsylvania.[3]

_____

[1] 75 Pa.C.S. § 3742(a).

[2] 18 Pa.C.S. § 2504(a) and 18 Pa.C.S. § 2705.

[3] Appellant's sentence was amended on January 24, 2018, and he filed his notice of appeal on February 20, 2018. Appellant's amended sentence included three years of probation for the involuntary manslaughter conviction, as opposed to the five years of probation included in the original sentence. Amended Sentencing Order, 1/24/18, at 1-2.

Trial Court Opinion, 8/15/18, at 1-2.

Appellant presents the following issue for our review: "Whether verdict [was] against the weight and sufficiency of the evidence when the jury acquitted Appellant of homicide by vehicle but convicted Appellant of involuntary manslaughter under the same facts." Appellant's Brief at 5. We first observe that a challenge to the weight of the evidence must be properly preserved:

(A)   A claim that the verdict was against the weight of the evidence shall be raised with the trial judge in a motion for a new trial:

(1) orally, on the record, at any time before sentencing;

(2) by written motion at any time before sentencing; or

(3) in a post-sentence motion.

Pa.R.Crim.P. 607(A).

Herein, Appellant did not make a motion raising a weight-of-the-evidence claim before the trial court, as the Pennsylvania Rules of Criminal Procedure require. Pa.R.Crim.P. 607(A). Appellant did not raise this claim at any time prior to or at sentencing, nor did he file a post-sentence motion. Pa.R.Crim.P. 607(a). The fact that Appellant included an issue challenging the verdict on weight-of-the-evidence grounds in his 1925(b) statement and the trial court addressed Appellant's weight claim in its Pa.R.A.P. 1925(a) opinion did not preserve his weight-of-the-evidence claim for appellate review in the

absence of an earlier motion. ***Commonwealth v. Sherwood***, 982 A.2d 483, 494 (Pa. 2009). Thus, to the extent Appellant's claim challenges the weight of the evidence, such claim is waived.

The standard for evaluating sufficiency claims is as follows:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder['s]. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered.

***Commonwealth v. Estepp***, 17 A.3d 939, 943-944 (Pa. Super. 2011).

Despite stating in his issue raised on appeal that Appellant is challenging his conviction for involuntary manslaughter on the basis that it conflicts and is inconsistent with his acquittal of homicide by vehicle, Appellant focuses his argument on appeal on causation. Appellant's Brief at 10. Specifically, Appellant asserts that the necessary determination is whether his actions were a direct cause of the victim's death. ***Id.*** In support of his position, Appellant presents the following argument, which we repeat here verbatim:

> Here, Appellant and the victims did not see each other until the impact. The victims unfortunately crossed the intersection against

- 4 -

the red light. There was no factual determination of either Appellant's or the victim's speed at the time of travel. Finally, no matter what speed Appellant was driving, he could not have possibly avoided impact given the distance he was from the victims and the two second perception and reaction time involved. In this case, the jury misjudged the degree to which victim conduct cause[d] the death. Victims hurried across [the] street against traffic light busy school day, bus travelled to obstruct vision and turned Appellant could never stop in time.

*Id.* at 10-11.

Although Appellant raised this issue of causation in his Pa.R.A.P. 1925(b) statement, he did not present this issue in his statement of questions involved on appeal. Accordingly, we could deem this issue waived on this basis. *See* Pa.R.A.P. 2116 ("No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby."). We decline to find the entire issue waived, however, and address Appellant's claim to the extent he challenges the sufficiency of the evidence of his conviction for involuntary manslaughter as stated in his issue presented.

The offense of involuntary manslaughter is defined as: "[a] person is guilty of involuntary manslaughter when as a direct result of the doing of an unlawful act in a reckless or grossly negligent manner, or the doing of a lawful act in a reckless or grossly negligent manner, he causes the death of another person." 18 Pa.C.S. § 2504(a). Stated differently, "involuntary manslaughter requires 1) a mental state of either recklessness or gross negligence, and 2) a causal nexus between the conduct of the accused and the death of the victim." *Commonwealth v. Fabian*, 60 A.3d 146, 151 (Pa. Super. 2013).

The Crimes Code defines the term "recklessly" as follows:

A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustified risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.

*Commonwealth v. Huggins*, 836 A.2d 862, 868-869 (Pa. 2003) (quoting 18

Pa.C.S. § 302(b)(3)).

In seeking to define the requirement that a criminal defendant's conduct be a direct factor in the death of another, the courts of this Commonwealth have held that "so long as the defendant's conduct started the chain of causation which led to the victim's death, criminal responsibility for the crime of homicide may properly be found."

*Fabian*, 60 A.3d at 152.

In considering the sufficiency of the evidence supporting the conviction

of involuntary manslaughter, the trial court provided the following analysis:

[Appellant] was speeding down a street in his neighborhood at 3:15 p.m. on a school day. [Appellant] grew up and lived in the neighborhood. He knew there was a school a few blocks away. The video from SEPTA showed a school bus a block or so away. The car in front of him stopped - [Appellant] didn't even try to apply the brakes - there are no skid marks on the roadway at all - he barreled through the intersection and plowed into the children. Eight year old Jayanna bounced onto his hood and then his windshield, then into the air and onto the ground and [Appellant] didn't even slow down.

Caroline DeMarco, an eye-witness on 63rd Street that afternoon, described [Appellant] as "just really barreling down 63rd Street...when the car was coming towards me, the car was at full speed. It never broke. It never braked...The car never braked, no." Steffoni Bryant had picked up his daughter at school

that afternoon and saw the accident as it happened. Mr. Bryant testified:

> "And this other car was coming down 63rd awfully fast. And it hit Jayanna so hard, that the impact of his car hit her. And it, you know, knocked her shoes and book bag off her feet...I never seen nothing like that in my entire life. [Appellant], he didn't stop. He just kept going. He could have stopped. He could have stopped. People tried to get him to stop. He wouldn't stop at all. He just kept going, you know. And people that was out there, they are trying to flag him down for him to stop. He wouldn't stop."

Mr. Bryant testified that the speed limit was twenty-five miles an hour, that [Appellant] was "way over the speed limit," that he maintained the same speed after he hit Jayanna and that he never hit the brakes. Tyrone Hamilton was the School Crossing Guard at 63rd and Lansdowne Avenue on the afternoon of November 18th, 2016, who, although he did not see the accident testified that he heard the 'thud' of the impact but no screeching of brakes beforehand and that the car never stopped. Officer Patrick Gallagher was the accident investigation officer assigned to investigate this accident who testified that he is trained to look for skid marks, that he examined the roadway at the scene and there were no pre or post-impact skid marks. Lastly, [Appellant's] flight and concealment after the accident clearly could have been considered by the jury as circumstantial evidence of [Appellant's] consciousness of guilt. Clearly, the evidence was more than sufficient for the jury to convict [Appellant] of involuntary manslaughter as well as recklessly endangering another person.

Trial Court Opinion, 8/15/18, at 5-6 (internal citations omitted).

The trial court's summation of evidence is supported by the record. Viewing the evidence in the light most favorable to the Commonwealth, the evidence is sufficient to support Appellant's conviction of involuntary manslaughter. Appellant acted recklessly with disregard to a substantial risk by driving significantly above the speed limit through an intersection nearby

to a school and children. N.T., 11/1/17, at 5-6. The evidence reflects that Appellant did not stop or attempt to slow down upon encountering the children. N.T., 10/31/17, at 112, 128; N.T., 11/1/17, at 10. Indeed, he did not stop or slow his vehicle after hitting the victims. N.T., 11/1/17, at 6. Furthermore, the evidence indisputably supports the conclusion that Appellant's conduct "started the chain of causation which led to the victim's death." *Fabian*, 60 A.3d at 152. Thus, we agree with the trial court's conclusion that there was sufficient evidence to support Appellant's conviction of involuntary manslaughter.

Furthermore, to the extent Appellant argues that his conviction for involuntary manslaughter cannot stand because he was acquitted of homicide by vehicle and the verdicts are inconsistent, we conclude that he is entitled to no relief on this basis. First, the elements of the two crimes differ and evidence could be sufficient to establish one crime and not the other. Pursuant to Section 3732(a) of the Vehicle Code:

> [a]ny person who recklessly or with gross negligence causes the death of another person while engaged in the violation of any law of this Commonwealth or municipal ordinance applying to the operation or use of a vehicle or to the regulation of traffic except section 3802 (relating to driving under influence of alcohol or controlled substance) is guilty of homicide by vehicle, a felony of the third degree, when the violation is the cause of death.

75 Pa.C.S. § 3732(a).

Accordingly, to sustain a conviction under Section 3732(a), the Commonwealth is required to prove that Appellant caused the victim's death

- 8 -

by acting recklessly or with gross negligence, while violating a law or municipal ordinance under the conditions set forth in the statute. 75 Pa.C.S. § 3732(a). Thus, homicide by vehicle requires proof that the death was caused by acting recklessly or with gross negligence **while violating a law or municipal ordinance**. Involuntary manslaughter does not require proof of violation of a Commonwealth law or municipal ordinance. 75 Pa.C.S. § 2504(a). Indeed, as outlined above, a conviction for involuntary manslaughter can stand where the person caused the death of an individual while engaged in a lawful activity, but did so recklessly or in a grossly negligent manner. 75 Pa.C.S. § 2504(a). Accordingly, a conviction of involuntary manslaughter is not inconsistent, *per se*, with an acquittal of homicide by vehicle.

Furthermore, the law is clear that even an inconsistent verdict is allowed to stand as long as the evidence is sufficient to support the conviction. *Commonwealth v. Miller*, 35 A3d 1206, 1208 (Pa. 2012). Our Supreme Court has "continued to embrace the principle that juries may reach inconsistent verdicts, along with its corollary that we may not interpret a jury acquittal as a specific factual finding with regard to the evidence." *Commonwealth v. Moore*, 103 A.3d 1240, 1247 (Pa. 2014). As explained previously, Appellant's conviction for involuntary manslaughter was supported by sufficient evidence. Thus, Appellant is entitled to no relief on this basis.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>8/28/19</u>