J-S06019-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KEYEEN DWONNE JEFFERSON | : | |
| | : | |
| Appellant | : | No. 1128 MDA 2022 |

Appeal from the Judgment of Sentence Entered March 30, 2022
In the Court of Common Pleas of Franklin County Criminal Division at
No(s): CP-28-CR-0000546-2020

BEFORE: STABILE, J., NICHOLS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY NICHOLS, J.: **FILED: AUGUST 15, 2023**

Appellant Keyeen Dwonne Jefferson appeals from the judgment of sentence imposed following his conviction for criminal attempt—indecent assault. On appeal, Appellant argues that the trial court abused its discretion by granting the Commonwealth's motion to amend the information and denying his motion for judgment of acquittal. We affirm.

The trial court summarized the underlying facts of this case as follows:

The event in question occurred on April 11, 2020 at 702 Lincoln Way East, Chambersburg. Aleysia Barnes ([the victim]) was playing board games with Tera Franklin, Desmond Divens, and [Appellant]. N.T. Trial, 11/15/21, [at] 34. Tera Franklin is the victim's mother and, at the time, she was in a relationship with [Appellant]. Desmond Divens is [Appellant's] daughter. The victim, Ms. Franklin, Ms. Divens, and [Appellant] were all drinking and the victim passed out around midnight. *Id.* at 146-147.

---

[*] Former Justice specially assigned to the Superior Court.

[Appellant] picked the victim up and Ms. Franklin and Ms. Divens followed him while he carried the victim to her bedroom. *Id.* at 51. They laid the victim with her head "on top by the pillow." *Id.* at 56. Ms. Franklin testified that the victim was lying "straight" on the bed at this point in time. *Id.* Then Ms. Franklin went outside to smoke a cigarette. *Id.* at 51. [Appellant] came outside to tell her that he was going to go upstairs and smoke marijuana. *Id.* Ms. Franklin testified that she had "a bad feeling" so she went upstairs. *Id.*

Ms. Franklin saw [Appellant] in her unconscious daughter's bedroom. *Id.* She testified, "When I walked into that room . . . I could [see] my daughter's bare butt. I could see that she was pulled closer to the edge of the bed." *Id.* She testified that the victim "was in a v shape pulled close to the edge of the bed and her bottom was fully exposed, her butt was fully exposed. Her pants were pulled down right underneath probably her butt cheek." *Id.* at 61. [Appellant] was "right up against the bed." *Id.* Ms. Franklin could see that [Appellant] "had his penis in his right hand and he jumped back and when he jumped back he grabbed his pants with his left hand and he put his penis in his pants." *Id.* at 52. [Appellant] left the victim's bedroom and went into the bathroom. *Id.*

Ms. Franklin testified that she "acted like nothing happened because [she] was so shocked and disgusted. . . ." *Id.* at 54. She went downstairs, saw that Ms. Divens was asleep on the coach, and went upstairs with [Appellant] and acted like she was asleep. *Id.* After a half an hour to an hour later, [Appellant] left their shared room. *Id.* at 54. She caught him trying to go back into the victim's room. *Id.* at 55. The next morning, the victim woke up in her bed wearing the same clothes she had on the night before. *Id.* at 35. Ms. Franklin then took the victim to Altoona to visit with her grandmother. *Id.* at 36. Ms. Franklin told the victim what happened the night before and, after they visited [the v]ictim's grandmother, they went to the Chambersburg Hospital for a rape kit. *Id.* at 36. The victim does not remember the incident but did not consent or discuss having sexual contact with [Appellant]. *Id.* at 37 and 43.

Officer Orien Hippensteal with the Chambersburg police was then called to the Chambersburg Hospital to make contact with the victim. *Id.* at 99. The case was then assigned to Detective James Iversen. Detective Iversen interviewed the victim and Ms. Franklin. He contacted [Appellant] over the phone and asked if

he could speak to him regarding the events that happened on April 11 and 12. *Id.* at 113. [Appellant] told him that he could be interviewed on April 14th around 2:30. *Id.* at 116-117. The interview was audio and visually recorded and played for the jury during trial. While in the interview, [Appellant] told Detective Iversen that he needed to leave in about 10 to 15 minutes so he could go to work. *Id.* at 118. During the interview, [Appellant] kept repeating questions and asking why he was there.[1] *Id.* at 119.

Detective Iversen then got a search warrant for [Appellant's] DNA. *Id.* at 124. [Appellant] was residing with his sister and law enforcement attempted to execute the warrant. *Id.* at 125-126. They knocked on the door 10 times and nobody answered. *Id.* Detective Iversen informed another patrol unit to remain in the area. *Id.* After 15 minutes, [Appellant] exited the residence. *Id.* Detective Iversen, in an unmarked vehicle, attempted to make contact with [Appellant] by calling out to him three different times, but [Appellant] kept walking. *Id.* Detective Iversen got out of his

---

[1] Appellant's recorded police interview was also included in the certified record. *See* Commonwealth's Ex. #5. However, because a transcript of this interview was not included in the certified record, we cite to the interview by timecode. During the interview, Appellant stated that he was drinking and playing games with the victim, Ms. Divens, and Ms. Franklin on the night of April 11, 2020. *Id.* at 2:41:31 - 2:41:46. Appellant stated that after the victim passed out, he carried her up to her bedroom. *Id.* at 2:43:56 - 2:44:40.

Appellant indicated that later that evening, while Ms. Divens and Ms. Franklin were outside smoking a cigarette, he went upstairs to check on the victim. *See id.* 2:52:14. However, Appellant stated that he ultimately left the victim's room without checking on her and walked towards the bathroom, at which point Ms. Franklin confronted Appellant and asked what he was doing in the victim's room. *Id.* at 2:53:06, 2:57:48. Appellant reiterated that he had been "checking on" the victim. *Id.*

When asked why the victim's pants were pulled down, Appellant stated "her pants weren't down" and then explained he did not "think" that was the case. *Id.* at 2:59:12 - 2:59:16. He also denied that his own pants were pulled down and repeatedly stated that he did not "do anything sexual" to the victim. *Id.* at 2:59:25 - 2:59:30; 3:01:14. Finally, Appellant confirmed that his DNA would not appear in any lab results from the victim because he "didn't do nothing with this girl." *Id.* at 3:02:13.

car, approached [Appellant] with the search warrant, and obtained a sample of [Appellant's] DNA though a buccal swab. *Id.* at 125-126. [Appellant] said that his DNA "shouldn't" come back. *Id.* at 126. The victim's rape kit indicated that there was no DNA present, so there was nothing to compare the sample to. *Id.* at 133. Based on his investigation, Detective Iversen contacted the Franklin County District Attorney's Office and filed charges against [Appellant]. *Id.* at 126.

Ms. Divens and [Appellant] also testified at trial. Ms. Divens testified that she and Ms. Franklin smoked cigarettes outside. *Id.* at 148. [Appellant] came outside and said that he was going to use the bathroom and check on the victim. *Id.* at 148. Ms. Divens testified that she, [Appellant], and Ms. Franklin then played another board game. After [Appellant] and Ms. Franklin went upstairs, Ms. Divens checked on the victim. She testified that she was "hanging off the bed like she rolled over" but could only see the top half of the victim's body because she was under a blanket. *Id.* at 150. Ms. Divens then testified that it was not uncommon for the victim to pass out drinking and take off her pants in her sleep. *Id.* at 151. [Appellant] testified that when Ms. Franklin and Ms. Divens smoked cigarettes outside, that he told them that he was going to go check on the victim because he wanted to go upstairs and smoke marijuana. *Id.* at 163. When the Commonwealth asked about the inconsistency between his testimony and his daughter's testimony, he said that Ms. Divens was incorrect. *Id.* at 171. [Appellant] also indicated that he was having problems in his relationship with Ms. Franklin. However, in his interview with Detective Iversen, he told the Detective that the two got along well and were getting married. *Id.* at 179.

Trial Ct. Op., 10/6/22, at 4-8.

Appellant was initially charged with one count of indecent assault.[2] On November 1, 2021, two weeks prior to trial, the Commonwealth filed a motion to amend charge from indecent assault to criminal attempt—indecent assault.[3]

---

[2] 18 Pa.C.S. § 3126(a)(4).

[3] 18 Pa.C.S. § 901(a).

The trial court conducted a hearing on November 10, 2021. At that time, Appellant argued that he would be prejudiced by the amendment because it would necessitate a change in defense strategy. *See* N.T. Hr'g, 11/10/21, at 4-5. Specifically, Appellant claimed that his entire defense strategy was based on the lack of DNA evidence and his argument that no contact actually occurred. *Id.* at 5. Ultimately, the trial court granted the Commonwealth's motion and the matter proceeded to trial.

On November 15, 2021, following a one-day trial, the jury found Appellant guilty of criminal attempt—indecent assault. On March 30, 2022, the trial court sentenced Appellant to eighteen to forty-eight months' incarceration. Appellant subsequently filed a post-sentence motion, which the trial court denied.

Appellant filed a timely notice of appeal and a court-ordered Pa.R.A.P. 1925(b) statement. The trial court issued a Rule 1925(a) opinion addressing Appellant's claims.

On appeal, Appellant raises the following issues for review:

1. Whether the trial court erred by granting the Commonwealth's motion to amend the information?

2. Whether the trial court erred by denying [Appellant's] post-sentence motion for judgment of acquittal?

Appellant's Brief at 12.

**Amendment to Information**

In his first claim, Appellant argues that the trial court erred in granting the Commonwealth's request to amend the information. *Id.* at 16. In support, Appellant contends that he suffered prejudice because the amendment changed the factual scenario underlying the charge and modified the description of the charge to an entirely separate and distinct offense. *Id.* at 18-19. Appellant also argues that the amendment necessitated a change in defense strategy. *Id.* at 19. Specifically, Appellant argues that, prior to the amendment, he "intended on presenting evidence that no contact occurred, and there was a DNA test that showed that[,]" but following the amendment, his "defense strategy then had to shift to an assault of credibility on the complainant rather than a specific defense showing[] specific proof that no contact occurred." *Id.* at 20. Appellant also claims that the timing of the amendment weighs in his favor because "[t]he amendment and hearing [on] the motion to amend occurred shortly before trial" and "[t]here was insufficient time" for him to prepare. *Id.* Although Appellant acknowledges that he did not request a continuance, he claims that the Commonwealth's "negligence in failing to provide adequate notice should not force a defendant into having to waive his right to a speedy trial." *Id.* at 21.

Appellant concludes that, although the amendment did not add new facts, it "was late, changed defense strategy, and called for an entirely new criminal charge, not merely a correction or alternative theory. Appellant was

clearly prejudiced by the amendment, and the convictions must be vacated."

*Id.*

We review a trial court's decision to grant or deny a motion to amend an information for an abuse of discretion. *See Commonwealth v. Small*, 741 A.2d 666, 681 (Pa. 1999). As we have explained,

> [a]n abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record. If in reaching a conclusion the trial court overrides or misapplies the law, discretion is then abused and it is the duty of the appellate court to correct the error.

*Commonwealth v. Belknap*, 105 A.3d 7, 10 (Pa. Super. 2014) (citations omitted and some formatting altered).

Rule 564 of the Pennsylvania Rules of Criminal Procedure provides as follows:

> The court may allow an information to be amended, provided that the information as amended does not charge offenses arising from a different set of events and that the amended charges are not so materially different from the original charge that the defendant would be unfairly prejudiced. Upon amendment, the court may grant such postponement of trial or other relief as is necessary in the interests of justice.

Pa.R.Crim.P. 564.

"[T]he purpose of Rule 564 is to ensure that a defendant is fully apprised of the charges, and to avoid prejudice by prohibiting the last minute addition of alleged criminal acts of which the defendant is uninformed." *Commonwealth v. Sinclair*, 897 A.2d 1218, 1221 (Pa. Super. 2006)

(citation omitted). "[O]ur courts apply the rule with an eye toward its underlying purposes and with a commitment to do justice rather than be bound by a literal or narrow reading of [the] procedural rules." *Commonwealth v. Grekis*, 601 A.2d 1284, 1289 (Pa. 1992).

When presented with a question concerning the propriety of an amendment, we consider

> [w]hether the crimes specified in the original indictment or information involve the same basic elements and evolved out of the same factual situation as the crimes specified in the amended indictment or information. If so, then the defendant is deemed to have been placed on notice regarding his alleged criminal conduct. If, however, the amended provision alleges a different set of events, or the elements or defenses to the amended crime are materially different from the elements or defenses to the crime originally charged, such that the defendant would be prejudiced by the change, then the amend[ment] is not permitted.

*Commonwealth v. Mentzer*, 18 A.3d 1200, 1202 (Pa. Super. 2011) (citations omitted).

> Since the purpose of the information is to apprise the defendant of the charges against him so that he may have a fair opportunity to prepare a defense, our Supreme Court has stated that following an amendment, relief is warranted only when the variance between the original and the new charges prejudices [a defendant] by, for example, rendering defenses which might have been raised against the original charges ineffective with respect to the substituted charges.

*Sinclair*, 897 A.2d at 1223 (citation omitted).

In determining whether a defendant suffered prejudice, we consider the following factors:

(1) whether the amendment changes the factual scenario supporting the charges; (2) whether the amendment adds new facts previously unknown to the defendant; (3) whether the entire factual scenario was developed during a preliminary hearing; (4) whether the description of the charges changed with the amendment; (5) whether a change in defense strategy was necessitated by the amendment; and (6) whether the timing of the Commonwealth's request for amendment allowed for ample notice and preparation.

*Mentzer*, 18 A.3d at 1203 (citation omitted).

With respect to indecent assault, Section 3126(a)(4) of the Crimes Code provides:

**(a)  Offense defined.**—A person is guilty of indecent assault if the person has indecent contact with the complainant, causes the complainant to have indecent contact with the person or intentionally causes the complainant to come into contact with seminal fluid, urine or feces for the purpose of arousing sexual desire in the person or the complainant and:

* * *

(4)  the complainant is unconscious or the person knows that the complainant is unaware that the indecent contact is occurring;

18 Pa.C.S. § 3126(a)(4).  "Indecent contact" is defined as "[a]ny touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire, in any person."  18 Pa.C.S. § 3101.[4]

---

[4] We emphasize that, unlike rape and IDSI, penetration is not an element of indecent assault.  **Compare** 18 Pa.C.S. § 3121(a) (rape) **and** 18 Pa.C.S. § 3123(a) (IDSI) **with** 18 Pa.C.S. § 3126(a) (indecent assault).

Section 901 states that "[a] person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." 18 Pa.C.S. § 901(a).

Here, the trial court addressed the amendment to the criminal information as follows:

> The Commonwealth amended the charges from indecent assault of person unconscious to criminal attempt-indecent assault of person unconscious. By amending the charge, the Commonwealth no longer needed to prove indecent contact with an unconscious complainant. 18 Pa.C.S. § 3126(a)(4). Rather, the Commonwealth needed to show that [Appellant] committed any act which constitutes a substantial step toward the commission of indecent assault. 18 Pa.C.S. § 901(a). The court conducted a hearing regarding this issue. At the hearing, the Commonwealth established that the amendment occurred because of the facts that had already been established in discovery through the information originally reported. N.T. Hr'g, 11/10/21, at 3. The defense asserted that their strategy "has been that this did not happen" but asserted that the amendment took away their defense. *Id.* at 4-5.
>
> The amendment is based on the same nexus of facts as the original charge. No additional witnesses or information that was not available in discovery was used to support the amendment. [Appellant] waived his preliminary hearing on April 27, 2020, therefore, the court cannot consider this factor. Of the six factors, the only ones that prejudice[s Appellant] are the fourth and fifth factors.
>
> In **Brown**, the Pennsylvania Supreme Court found that the defendant was prejudiced when the Commonwealth, immediately prior to the commencement of trial, sought leave to amend the information to charge [the] appellant with rape and IDSI with an unconscious person instead of the previously charged rape and IDSI by forcible compulsion. [**Commonwealth v. Brown**, 727 A.2d 541, 543 (Pa. 1999)]. The trial counsel received notice of the amendment only immediately prior to trial, and had no time to plot a strategy for establishing that the victim was conscious and capable of consent during the relevant time period. *Id.* at

544. [On appeal, the Supreme] Court determined that the defendant in that case suffered prejudice.

However, in the present case, the Commonwealth provided ample notice for the amendment. The hearing to determine whether the court should grant the Commonwealth's motion occurred on November 10, 2021. The trial was not scheduled until November 15, 2021. The defense still had four days to adjust their strategy in light of the Commonwealth needing to prove a substantial step rather than contact. N.T., 11/10/2021, at 6. This does not account for the Commonwealth putting [Appellant] on notice by filing its motion to amend information on November 1, 2021. [Appellant] had ample notice and time for preparation. For these reasons, [Appellant's] claim fails.

Trial Ct. Op. at 11-12 (some formatting altered, footnote omitted).

Based on our review of the record, we discern no abuse of discretion by the trial court in granting the Commonwealth's motion to amend the information. *See Small*, 741 A.2d at 681; *see also Belknap*, 105 A.3d at 10. As noted previously, Appellant was initially charged with indecent assault of an unconscious person based on Ms. Franklin's allegation that she saw Appellant with his penis in his right hand in the victim's room at which point she observed the victim laying face-down on the bed with her buttocks exposed and "pulled closer to the edge of the bed." *See* Trial Ct. Op. at 4-8. Although the Commonwealth amended the indecent assault charge from a completed offense to an attempt, that did not change the factual scenario underlying the charges or add any facts that were unknown to Appellant. *See Mentzer*, 18 A.3d at 1203; *Sinclair*, 897 A.2d at 1223.

We recognize that the description of the charges changed because the Commonwealth was no longer required to prove indecent contact, which **may**

**have** necessitated a change in defense strategy. However, since his initial interview with police, Appellant has maintained that he briefly entered the victim's room to check on her, that he exited moments later, that he did not have his pants pulled down, and that he did not have any sexual contact with the victim. **See** Commonwealth's Ex. #5; **see also** N.T. Trial at 165-66. Although Appellant claims that he intended focus his entire defense on the fact that no male DNA was present in the victim's vaginal and rectal areas, that would not preclude a conviction for indecent assault. **See Commonwealth v. Rivera**, 255 A.3d 497, 511 (Pa. Super. 2021) (explaining that a "defense that no penetration occurred and that there was a general lack of physical evidence—if believed by the jury—would no longer permit avoidance of all felony convictions, since lack of penetration was no defense" to indecent assault), *rev'd in part on other grounds*, --- A.3d ---, 22 MAP 2022, 2023 WL 4095438 (Pa. filed June 21, 2023).[5]

Finally, as noted by the trial court, the Commonwealth filed the motion to amend the information two weeks before trial, and Appellant did not request a continuance when the trial court granted the motion four days before trial was scheduled to begin. **See Sinclair**, 897 A.2d at 1223. For these reasons, we conclude that Appellant did not suffer prejudice as a result of the

---

[5] We note that in **Rivera**, our Supreme Court granted discretionary review for the purpose of reiterating "that different harmless error standards apply when evaluating testimonial references to a defendant's post-arrest versus pre-arrest silence." **Rivera**, 2023 WL 4095438 at *1. The Supreme Court did not address this Court's conclusions regarding whether the appellant was prejudiced by the amendment to the information. **Id.** at *4 n.3.

amendment. ***See id.***; ***see also Mentzer***, 18 A.3d at 1203. Therefore, Appellant is not entitled to relief.

## Sufficiency of the Evidence

In his remaining issue, Appellant argues that the trial court erred in denying his motion for judgment of acquittal because the Commonwealth failed to prove that he took a substantial step towards having indecent contact with the victim. Appellant's Brief at 23. In support, Appellant refers to Ms. Franklin's testimony that the victim's "buttocks was exposed and she had moved on the bed" and argues that it "is not circumstantial evidence of an attempt by Appellant to have indecent contact with her." ***Id.*** Further, he argues that "while Appellant clearly exposed himself in [the victim's] room, that is not evidence tending to show that he was attempting to have contact with [the victim]" and that, "[e]ven coupled with his position within the room, it is unclear what he intended to do, and that evidence does not point to him attempting to have contact." ***Id.*** at 24. Therefore, Appellant concludes that his conviction for attempted indecent assault should be vacated. ***Id.*** at 25.

In reviewing Appellant's claim, our standard of review is as follows:

> A motion for judgment of acquittal challenges the sufficiency of the evidence to sustain a conviction on a particular charge, and is granted only in cases in which the Commonwealth has failed to carry its burden regarding that charge. Therefore, in usual circumstances, we apply the following standard of review to sufficiency claims which arise in the context of a motion for judgment of acquittal:
>
> > A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material

- 13 -

element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim, the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

*Commonwealth v. Stahl*, 175 A.3d 301, 303-04 (Pa. Super. 2017) (citations omitted and formatting altered). "In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder." *Commonwealth v. Fabian*, 60 A.3d 146, 150-51 (Pa. Super. 2013) (citation omitted).

Here, the trial court addressed Appellant's claim as follows:

In the present case, the Commonwealth established that the victim passed out after drinking and [Appellant] carried her to her room. N.T. Trial, 11/15/21, [at] 50-51. [Appellant] positioned her on her bed with "her head at the top by the pillow" so she was lying straight on the bed. *Id.* at 56.

Ms. Franklin testified that later in the evening, she walked into her daughter's bedroom and saw [Appellant] against the victim's bed. *Id.* at 61. At this point in time, the victim's body "was in a v shape pulled close to the edge of the bed and her bottom was fully exposed, her butt was fully exposed. Her pants were pulled down right underneath probably her butt cheek." *Id.* at 61. She testified that she saw that [Appellant] "had his penis in his right hand and he jumped back and when he jumped back he grabbed his pants with his left hand and he put his penis in his pants." *Id.* at 52.

[Appellant] asserted that there is nothing in the record to support that [Appellant] pulled the victim to the edge of the bed, and therefore cannot be considered a substantial step. N.T. Hr'g, 6/3/22, at 5. [Appellant] argued that the jury also heard testimony that sometimes when the victim passes out from

- 14 -

drinking she removes her pants in her sleep. ***Id.***; ***see also*** N.T. Trial, 11/15/21, at 151. However, this does not preclude the Commonwealth from showing that [Appellant] took substantial steps toward the crime. The jury made a credibility determination based on the circumstantial evidence presented. The fact finder believed Ms. Franklin when she testified that she caught [Appellant] holding his penis while her unconscious daughter's pants were pulled down. The Commonwealth provided sufficient evidence that [Appellant] took substantial steps toward the completion of indecent assault.

Trial Ct. Op. at 15-16.

Following our review of the record, and in viewing the evidence in the light most favorable to the Commonwealth, we conclude that there was sufficient evidence to sustain Appellant's conviction for criminal attempt—indecent assault. ***See Stahl***, 175 A.3d at 303-04; 18 Pa.C.S. § 901(a). As noted by the trial court, the victim's mother testified that she saw Appellant in the victim's bedroom holding his penis while the victim was lying face-down on the bed in a "v shape" with her pants pulled below her buttocks. ***See*** N.T. Trial at 61. When viewed in the light most favorable to the Commonwealth, we conclude that it was reasonable for the jury to infer that Appellant had performed acts constituting a substantial step toward committing indecent assault. For these reasons, Appellant's sufficiency claim fails. Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/15/2023