J-A14039-19

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
MICHAEL THOMAS BURNS, :
:
Appellant : No. 1690 WDA 2018

Appeal from the Judgment of Sentence Entered October 25, 2018
in the Court of Common Pleas of Butler County
Criminal Division at No(s): CP-10-CR-0002866-2016

BEFORE: OTT, J., KUNSELMAN, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.: FILED SEPTEMBER 11, 2019

Michael Thomas Burns ("Burns") appeals from the judgment of sentence imposed following his convictions of homicide by vehicle, involuntary manslaughter, and recklessly endangering another person ("REAP").[1] We affirm in part, and vacate in part.

On July 26, 2016, Burns, a CDL[2] driver for Jeb's Trucking,[3] was towing an air compressor using a Sterling rollback-style flatbed truck. As Burns approached the intersection of Route 8 and Route 228 in Butler County at approximately 2:45 p.m., he hit the brakes in order to shift gears, but the truck's brakes did not engage. Burns continued to pump the brakes, while he

_____

[1] 75 Pa.C.S.A. § 3732; 18 Pa.C.S.A. §§ 2504, 2705.

[2] Commercial Driver's License.

[3] Jeb's Trucking is a subsidiary of Air Equipment Corporation, a company that rents and sells air compressors.

moved into the intersection. The truck proceeded through a red light, across the intersection, and struck a motorcycle driven by Dale Major, who died as result of his injuries.

Burns was able to negotiate the truck onto a dirt access road, where it ultimately came to a stop. Middlesex Township Police Sergeant Randy Ruediger, one of the responding officers, interviewed Burns after the accident. Burns later provided a written statement to police.

Police obtained two search warrants to conduct various mechanical tests on the Sterling rollback truck and the air compressor unit. The truck weighed 29,120 pounds, and the air compressor unit weighed 18,800 pounds, which is 64% of the weight of the truck. The inspection revealed that the air compressor unit had an electrical braking system, but the truck did not have an electrical brake controller. The inspecting officers also found that the brakes on the Sterling rollback truck were not fully functioning, and could not be fully adjusted.

Burns was charged with homicide by vehicle, involuntary manslaughter, REAP, and related summary offenses. The trial court conducted a preliminary hearing on December 21, 2016. Burns subsequently filed a Petition for Writ of Habeas Corpus, asserting that the Commonwealth had failed to establish a prima facie case regarding the charges of homicide by vehicle, involuntary manslaughter, and REAP. Following a hearing on April 4, 2017, the trial court ordered Burns to file a brief in support of his Petition, and ordered the

Commonwealth to file a responsive brief. Both parties complied. On June 5, 2015, the trial court denied Burns's Petition for Writ of Habeas Corpus.

Relevant to this appeal, on August 3, 2018, Burns filed a Motion in limine, seeking to preclude expert testimony by Middlesex Township Police Officers Conrad Pfeifer ("Officer Pfeifer") and Randall Scott Davison ("Officer Davison"). Burns argued that, in response to a discovery request, the Commonwealth sent a letter indicating its intention to call Officers Pfeifer and Davison as expert witnesses, but failed to submit expert reports. The trial court addressed Burns's Motion in limine at the start of trial. After hearing arguments by Burns and the Commonwealth, the trial court denied the Motion in limine.[4]

Following a jury trial, Burns was convicted of homicide by vehicle, involuntary manslaughter, and REAP. The trial court found Burns guilty of the summary offenses. The trial court delayed sentencing and ordered a pre-sentence investigation report. On October 25, 2018, the trial court sentenced Burns to an aggregate term of 3 to 6 months in prison, with immediate parole to house arrest, followed by 102 months of probation.[5] Burns filed a timely

---

[4] During argument, the Commonwealth indicated that it had decided to present Officer Davison only as a fact witness, rather than as an expert. See N.T., 8/21/18, at 4-5.

[5] Relevant to the instant appeal, the trial court imposed separate, concurrent terms of prison and probation for Burns's homicide by vehicle and involuntary manslaughter convictions.

Notice of Appeal and a court-ordered Pa.R.A.P. 1925(b) Concise Statement of errors complained of on appeal.[6]

Burns now raises the following issues for our review:

1. Was there insufficient evidence to establish that [] Burns acted recklessly[,] while engaged in a violation of a law of this Commonwealth[,] thereby rendering his conviction for homicide by vehicle invalid?

2. Was there insufficient evidence to establish the mens rea element of involuntary manslaughter: to wit, did the Commonwealth fail to introduce sufficient evident [sic] to establish that the death herein occurred "as a direct result of the doing of an unlawful act in a reckless or grossly negligent manner, or the doing of a lawful act in a reckless or grossly negligent manner?"

3. Did the Commonwealth introduce insufficient evidence to establish [REAP], i.e., that [] Burns recklessly engaged in conduct that caused the accident and death herein?

4. Was the Commonwealth's evidence insufficient to establish criminal causation for homicide by vehicle, involuntary manslaughter, and recklessly endangering another person?

5. Did the [c]ourt err in permitting expert testimony by a police officer[,] where the Commonwealth failed to turn over and provide an expert report, despite there having been a pre-trial discovery request and a [M]otion in limine seeking to preclude such expert testimony?

_____

[6] The Commonwealth filed a Notice of Cross Appeal and a court-ordered Pa.R.A.P. 1925(b) Concise Statement, challenging the legality of Burns's sentence. This Court, sua sponte, consolidated the appeals. The Commonwealth subsequently filed an Application to Dismiss Cross Appeal. This Court treated the Application as a praecipe to discontinue, and discontinued the Commonwealth's cross appeal.

6. Did the trial court illegally sentence [] Burns on both homicide by vehicle and involuntary manslaughter, in violation of the federal and state double jeopardy clauses?

Brief for Appellant at 4-5.

In his first three claims, which we will address together, Burns challenges the sufficiency of the evidence supporting his convictions of homicide by vehicle, involuntary manslaughter, and REAP. See id. at 11-21. Specifically, Burns argues that the evidence was insufficient to establish the mens rea, i.e., recklessness, for each offense. See id. Burns claims that a violation of the Motor Vehicle Code ("the Code") does not, alone, constitute criminal recklessness. Id. at 14. According to Burns, his actions did not exhibit a conscious disregard for human life. Id. at 18. Burns also contends that he was not aware of a substantial and unjustifiable risk, and points to the following evidence: (1) Burns had never driven the Sterling truck prior to the July 26, 2016 accident; (2) the Sterling truck had been inspected by mechanics; (3) the air compressor's electrical cord fit into the female connector on the truck, and Burns therefore believed that the truck and air compressor were compatible; and (4) Burns performed a brake test, during which he felt resistance and believed the brakes were functioning. Id. at 19.

> The standard we apply in reviewing the sufficiency of the evidence is whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every

possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact, while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

Commonwealth v. Furness, 153 A.3d 397, 401 (Pa. Super. 2016) (citation and brackets omitted).

The Code defines homicide by vehicle as follows:

§ 3732. Homicide by vehicle

(a) Offense.--Any person who recklessly or with gross negligence causes the death of another person while engaged in the violation of any law of this Commonwealth or municipal ordinance applying to the operation of a vehicle or to the regulation of traffic except section 3802 (relating to driving under the influence of alcohol or controlled substance) is guilty of homicide by vehicle, a felony of the third degree, when the violation is the cause of death.

75 Pa.C.S.A. § 3732(a) (emphasis added). Additionally, the Crimes Code defines involuntary manslaughter as follows:

§ 2504. Involuntary manslaughter

(a) General rule.--A person is guilty of involuntary manslaughter when as a direct result of the doing of an unlawful act in a reckless or grossly negligent manner, or the doing of a lawful act in a reckless or grossly negligent manner, he causes the death of another person.

18 Pa.C.S.A. § 2504(a) (emphasis added). Further, regarding REAP, the Crimes Code provides that "[a] person commits a misdemeanor of the second

- 6 -

degree if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." Id. § 2705 (emphasis added).

Section 302 of the Crimes Code, which concerns culpability requirements, defines criminal recklessness as follows:

> A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.

18 Pa.C.S.A. § 302(b)(3). "[T]he mens rea of recklessness implicates knowledge in two ways: (1) the actor must consciously (i.e., with knowledge) disregard a substantial and unjustifiable risk; and (2) the risk that the actor disregards is measured by the circumstances known to the actor." Commonwealth v. Sitler, 144 A.3d 156, 164 (Pa. Super. 2016). Moreover, criminal recklessness encompasses the concept of gross negligence. Commonwealth v. Karner, 193 A.3d 986, 992 (Pa. Super. 2008).

At trial, Officer Davison, a certified accident reconstructionist, testified that he was off duty on July 26, 2016, but that he received a call to respond to the scene at approximately 3:00 p.m. See N.T., 8/21/18, at 138, 140. Officer Davison arrived on the scene approximately 45 minutes after receiving the call. See id. at 138, 139. Officer Davison testified that the Sterling truck and air compressor were towed to D & D Auto Salvage on July 29, 2016. See

id. at 143. According to Officer Davison, the truck and air compressor were later towed to the Penn Township Road Department for weighing. See id. at 144; see also id. at 140 (wherein Officer Davison stated that he is certified to weigh and measure vehicles).

Officer Davison stated that he zeroed the scale, and weighed the Sterling truck and air compressor separately. See id. at 145; see also id. at 146 (wherein Officer Davison testified that the scale is a 70-foot fixed scale). Officer Davison testified that the Sterling truck weighed 29,120 pounds. See id. at 146-47; see also id. at 147 (wherein the printed weight slip for the Sterling truck was admitted into evidence as Commonwealth's Exhibit 13). Officer Davison also testified that the air compressor weighed 18,800 pounds. See id. at 148; see also id. (wherein the printed weight slip for the air compressor was admitted into evidence as Commonwealth's Exhibit 14). Further, Officer Davison testified as follows regarding the significance of the respective weights of the Sterling truck and air compressor:

Q: Is there any significance to that in your investigation as to why those weights matter?

A: Yes. The air compressor is considered a special mobile

equipment.[7]  It's designed to be used off the road, but it's transported from construction site to construction site on the road. If it is, the weight of it exceeds forty percent of the weight of the towing vehicle that's towing it, it's required to have brakes that are functioning.[8]

\* \* \*

Q: Okay.  Now, as part of your investigation[,] did that raise a red flag to you?

A: Yes.

Q: That weight differential there?

A: Yes.

_____

[7] The Code defines "special mobile equipment," in relevant part, as "[v]ehicles not designed or used primarily for the transportation of persons or property, except for tools and parts necessary for the use and maintenance of the vehicle, and only incidentally operated or moved over a highway."  75 Pa.C.S.A. § 102.

[8] Relevantly, Title 67 of the Pennsylvania Code provides as follows:

§ 175.223. Braking systems.

\* \* \*

(b) Service brakes.  A vehicle specified under this subchapter shall be equipped with a service brake system.  This  section does not apply to nonself-propelled special mobile equipment having a gross weight which does not exceed 40% of the gross weight of the towing vehicle, or to a towed implement of husbandry.

(1) The service brake system shall be adequate to control movement and stop and hold the vehicle or combination on any grade on which it is operated under all conditions of loading.

67 Pa. Code § 175.223(b)(1).

Id. at 149-50 (footnotes added); see also id. at 153 (wherein Officer Davison explained that the air compressor weighed 64.5% of the weight of the Sterling truck).

Barry Stringer ("Stringer"), a mechanic employed by Air Equipment Corporation, testified that all of the company's large air compressors have electric brakes. See N.T., 8/22/18, at 4, 6, 7. Stringer identified the air compressor involved in the accident as one of Air Equipment Corporation's large air compressors, and stated that it was equipped with electric brakes. See id. at 8-9. Stringer testified that in July 2016, Jeb's Trucking had two trucks—the Sterling and a Western Star. See id. at 8. According to Stringer, the Western Star truck had a power source for electric brakes, but the Sterling truck did not. See id. at 9; see also id. (wherein Stringer testified that the power source is a square box mounted on the dashboard and easily seen). Stringer testified that the Western Star truck was out of service on the date of the accident, so Burns had to use the Sterling truck to haul the air compressor. See id. at 12-13.

The Commonwealth also presented the testimony of Officer Pfeifer, who was qualified as an expert in CDL licensing, commercial driving, and Pennsylvania vehicle inspection. See id. at 39, 41-42. Officer Pfeifer testified that he was called to participate in the accident investigation after the vehicles had been removed from the scene. See id. at 43. Officer Pfeifer stated that he first saw the Sterling truck and air compressor at the D & D Auto Salvage

lot, where he completed a visual inspection. See id. at 44. Officer Pfeifer testified that, during the visual inspection, he noticed that the air compressor had electric brakes, while the Sterling truck had air brakes. See id. at 45; see also id. at 47 (wherein Officer Pfeifer clarified that the Sterling truck was not equipped with an electrical power source).

Officer Pfeifer testified that when he performed a road test of the Sterling truck, he noticed that the foot brake valve "felt spongy and not what [he] would consider normal." Id. at 48; see also id. (wherein Officer Pfeifer stated that he noticed the "spongy" feeling in the brake valve after moving forward about 30 feet). According to Officer Pfeifer, the Sterling truck should be able to stop within 40 feet when traveling 20 miles per hour, but during the road test, the truck stopped at approximately 45 feet. See id. at 49. Officer Pfeifer also performed a road test of the Sterling truck, with the air compressor attached. See id. at 65. Officer Pfeifer testified that during the test, he traveled at approximately 35 miles per hour, and when he hit the brakes, only the brakes on the Sterling truck activated. See id. at 65, 69; see also id. at 69 (wherein Officer Pfeifer stated that "the brakes on the entire unit were not functioning properly[,]" explaining that the brake pedal felt spongy, and that "when [he] applied the brakes to normal pressure[,] that entire unit did not stop as it should or as soon as it should."). The record reflects that the entire unit came to a complete stop approximately 136 feet after the brakes were initially applied. See id. at 71. Finally, Officer Pfeifer

attached the air compressor to a tow truck with a functioning electric controller, and applied the electronic control to test the air compressor's brakes. See id. at 69-70. Officer Pfeifer testified that when he applied the air compressor's brakes, "[t]he trailer alone wouldn't let this unit move. Just its brakes alone would not let the unit move." Id. at 70.

Following the road test, Officer Pfeifer performed an inspection of the Sterling truck's braking system, which included physically removing the wheels and brake drums, and taking measurements of the components. See id. But see id. at 96 (wherein Officer Pfeifer conceded that the inspection he performed was different than what a CDL driver would do to complete a pre-trip inspection). Based on his inspection, Officer Pfeifer concluded that "the actual system was corroded to the point where it would not function to its full capacity." Id. at 50. Officer Pfeifer testified that he also checked the brakes on the air compressor by hooking up the compressor to a functioning electric unit, and completing a physical check. See id. Officer Pfeifer testified that the air compressor's brakes functioned perfectly when the compressor was attached to a tow truck with a functioning electric unit. See id. at 53. Additionally, Officer Pfeifer identified a photograph of an electric brake controller, and explained that such a device would typically be mounted near the steering wheel, under the dashboard. See id. at 51.

Officer Pfeifer testified that the connection between the brake controller and the air compressor should be examined during a pre-trip inspection. See

id. at 51, 104; *see also id.* at 56-57 (explaining that CDL drivers are required to complete pre-trip inspections); 61 (detailing portions of the Commercial Driver's Manual concerning the method of checking electric brakes). Officer Pfeifer also opined, in his expert capacity, that someone who had possessed their CDL license for 17 years would be expected to know the difference between air brakes and electric brakes. *See id.* at 81. Based upon his testing and inspection of the Sterling truck and air compressor, Officer Pfeifer opined that the Sterling truck was unable to provide power to the electric brakes. *See id.* at 74.

Based upon the foregoing, the trial court determined that the evidence was sufficient to establish recklessness, and sustain Burns's convictions, stating as follows:

> Viewed in the light most favorable to the Commonwealth's case, the evidence was sufficient to establish that [Burns] operated [the Sterling] truck towing a compressor without a functioning brake system, where a proper pre-trip inspection would have conclusively revealed that fact. Such action on the part of [Burns] resulted in him failing to stop the truck and compressor at the red signal at the intersection of Route 8 and Route 228. ... As a licensed commercial driver, by operating the truck and trailing compressor unit with non-functioning brakes, where the brakes of the trailing unit alone were required to provide sufficient force to stop and hold the combination on any grade on which it was operated under all conditions of loading under 67 Pa. Code § 175.223(b), [Burns] engaged in reckless conduct. [Burns] placed the lives of other motorists in danger by his reckless conduct. That reckless conduct resulted in the untimely death of another. There was sufficient evidence presented to permit the jury to find [Burns] guilty of homicide by vehicle, involuntary manslaughter, and [REAP].

Trial Court Opinion, 1/15/18, at 5-6.

Upon review, we conclude that the evidence viewed favorably to the Commonwealth, and all reasonable inferences taken therefrom, supports the trial court's finding that Burns's failure to perform an adequate pre-trip inspection (particularly with regard to the air compressor's brake connection) was a gross deviation from the standard of conduct expected from an experienced CDL driver. See 18 Pa.C.S.A. § 302(b)(3). Burns's failure to ascertain that the air compressor's brakes were connected and fully functioning, where CDL drivers are instructed to perform pre-trip inspections, created an unjustifiable risk of a motor vehicle accident. See id.; Stitler, supra; see also Commonwealth v. Moyer, 171 A.3d 849, 853 (Pa. Super. 2017) (considering the definition of recklessness, and stating that this Court has "upheld convictions where the defendant's conduct evidenced a conscious disregard of the substantial and unjustified risk that he would be involved in a traffic accident causing death." (citation and quotation marks omitted)). Thus, Burns is not entitled to relief on these claims.

In his fourth claim, Burns asserts that the evidence was insufficient to establish criminal causation for the offenses of homicide by vehicle, involuntary manslaughter, and REAP. Brief for Appellant at 21. Burns argues that "the fatal result was not only an obscure consequence of the braking system's failures, but the result was so remote and attenuated that it would be unfair to hold [] Burns responsible for the death of the victim." Id. at 22. Burns also contends that his pre-trip inspection could not have revealed the

brake problem on the truck itself, and therefore, the absence of a proper pre-trip inspection was not the cause of the accident and resulting death. Id. at 24. Burns points to his own testimony that, had he known the trailer brakes were not functioning properly, he would have loaded the air compressor onto the back of the truck for transport. Id. at 25. Thus, Burns argues, the Commonwealth failed to establish that the accident would have been avoided by prior knowledge of the inoperability of the air compressor's electrical braking system. Id. at 24-25. Additionally, Burns contends that the Commonwealth failed to produce evidence that the air compressor's brakes, if functioning properly, would have been able to stop the truck, which also had a brake malfunction. Id. at 24. Burns also argues that because the officer who first inspected the truck at the scene failed to recognize that the air compressor's brakes were not operational, it is "unjust and unfair to hold [him] criminally responsible" based on the same failure. Id. at 23, 26.

The Crimes Code provides that "[c]onduct is the cause of a result when[] (1) it is an antecedent but for which the result in question would not have occurred; and (2) the relationship between the conduct and result satisfies any additional causal requirements imposed by this title or by the law defining the offense." 18 Pa.C.S.A. § 303(a)(1), (2); see also Commonwealth v. Rementer, 598 A.2d 1300, 1305 (Pa. Super. 1991) (directing this Court to consider (1) "whether the defendant's conduct was an operative cause of the victim's death[;]" and (2) "whether the result of the defendant's actions [was]

so extraordinarily remote or attenuated that it would be unfair to hold the defendant criminally responsible."). Thus, "[t]o establish criminal causation, the Commonwealth must prove that the defendant's conduct was so directly and substantially linked to the actual result as to give rise to the imposition of criminal liability." Commonwealth v. Nunn, 947 A.2d 756, 760 (Pa. Super. 2008). Further, "the defendant's conduct need not be the only cause of the victim's death in order to establish a causal connection." Id.; see also Commonwealth v. Fabian, 60 A.3d 146, 152 (Pa. Super. 2013) (stating that "so long as the defendant's conduct started the chain of causation which led to the victim's death, criminal responsibility for the crime of homicide may properly be found." (citation omitted)).

Our review of the evidence, viewed in the light most favorable to the Commonwealth, reveals that Burns's conduct satisfies the above requirements. Officer Pfeifer testified that the Commercial Driver's Manual requires CDL drivers to conduct a pre-trip inspection of the vehicle they are driving. See N.T., 8/22/18, at 54-56; see also id. at 54-55 (wherein a copy of the Commercial Driver's Manual was admitted into evidence as Commonwealth's Exhibit 15). Officer Pfeifer also testified that both federal and state law prohibit the operation of an unsafe vehicle. See id. at 60. Additionally, Burns acknowledged that he understood the importance of pre-trip inspections, and agreed that the Commercial Driver's Manual is in place for safety reasons. See id. at 142. Because Burns had a duty to inspect the

Sterling truck and air compressor before starting his trip, it was reasonable for the jury to infer that, but for Burns's recklessness in failing to ensure that the brake systems were fully functioning, the accident would not have occurred. See generally Fabian, 60 A.3d at 152 (finding sufficient evidence to establish causation where a mechanic tasked with maintaining a van used to transport school children did not properly adjust brakes or otherwise ascertain defects during his inspection, and a subsequent accident caused by brake failure led to the death of a passenger). Further, we cannot agree with Burns's assertion that the vehicle accident in this case was an "obscure consequence" of a failure to check the brake systems. Therefore, Burns is not entitled to relief on this claim.

In his fifth claim, Burns argues that the trial court erred by permitting Officer Pfeifer to testify as an expert witness, where the Commonwealth did not provide an expert report. Brief for Appellant at 26. According to Burns, the Commonwealth's informal discovery did not include expert reports, and a September 2017 letter from the Commonwealth simply indicated, inter alia, that it would present a summary of Officer Pfeifer's qualifications to provide expert testimony as a CDL driver. Id. at 26-27. Burns claims that the Commonwealth never provided an expert report, summary of Officer Pfeifer's

qualifications, or his curriculum vitae, and instead produced only a standard police report. Id. at 27.[9]

> Our standard of review in cases involving the admission of expert testimony is broad: Generally speaking, the admission of expert testimony is a matter left largely to the discretion of the trial court, and its rulings thereon will not be reversed absent an abuse of discretion. An expert's testimony is admissible when it is based on facts of record and will not cause confusion or prejudice.

Commonwealth v. Watson, 945 A.2d 174, 176 (Pa. Super. 2008) (citations and quotation marks omitted).

Concerning pretrial disclosure of expert reports during discovery Pennsylvania Rule of Criminal Procedure 573, provides, in pertinent part, as follows:

Rule 573. Pretrial Discovery and Inspection

(B) Disclosure by the Commonwealth.

> (1) Mandatory. In all court cases, on request by the defendant, and subject to any protective order which the Commonwealth might obtain under this rule, the Commonwealth shall disclose to the defendant's attorney all of the following requested items or information, provided they are material to the instant case. The Commonwealth shall, when applicable, permit the defendant's attorney to inspect and copy or photograph such items.

* * *

---

[9] Despite his broad assertion that the trial court erred by permitting Officer Pfeifer to testify as an expert witness, Burns's Argument does not specifically challenge the trial court's qualification of Officer Pfeifer as an expert. Rather, Burns appears exclusively to challenge the sufficiency of the police report as an expert report, and we will limit our analysis accordingly.

(e) any results of reports of scientific tests, expert opinions, and written or recorded reports of polygraph examinations or other physical or mental examinations of the defendant that are within the possession or control of the attorney for the Commonwealth[.]

Pa.R.Crim.P. 573(B)(1)(e); see also Commonwealth v. Roles, 116 A.3d 122, 131 (Pa. Super. 2015) (stating that "there are no specific procedural rules governing expert reports in criminal cases, aside from Pa.R.Crim.P. 573....").

Although the Commonwealth submitted only Officer Pfeifer's police report, the police report contained his qualifications as a Pennsylvania-certified vehicle weighing and measuring officer, a Pennsylvania-certified inspection mechanic for all vehicles, and a CDL driver. The police report also included Officer Pfeifer's conclusion, based on his own testing and inspection, that the air compressor's brakes functioned properly, when attached to a unit with an appropriate power source. See Response to Motion in Limine, 8/13/18, Commonwealth's Exhibit A (Supplemental Narrative – Officer Conrad Pfeifer). The parties agree that following Burns's informal discovery request, the Commonwealth informed Burns of its intention to call Officer Pfeifer as an expert in a February 2017 letter, more than a year prior to the start of trial. Additionally, Officer Pfeifer had previously testified at a preliminary hearing in

December 2016.[10] Therefore, Burns had notice, well before the start of trial, that the Commonwealth intended to call Officer Pfeifer as an expert witness. Although Officer Pfeifer's trial testimony arguably exceeded the scope of his police report, Burns failed to establish that he was prejudiced by the admission of Officer Pfeifer's testimony. See Commonwealth v. Poplawski, 130 A.3d 697, 718 (Pa. 2015) (stating that "[e]ven where an expert's testimony arguably went beyond the scope of his or her report, the defendant still bears the burden of proving he suffered prejudice from the admission of the testimony."). In fact, Burns was able to cross-examine Officer Pfeifer regarding the results of his testing and inspection, as well as the proper scope of a pre-trip inspection. See N.T., 8/22/18, at 89-104. Burns also retained an expert, see Motion in Limine to Preclude Defense Expert Testimony, 8/14/18, though he did not call the expert to testify at trial. Under these circumstances, we conclude that Burns was not prejudiced by the use of the police report as Officer Pfeifer's expert report, and we otherwise discern no abuse of the trial court's discretion in permitting Officer Pfeifer to testify as an

---

[10] The certified record does not contain transcripts from the preliminary hearing, nor does the docket reflect when the hearing occurred. However, the trial court and the Commonwealth agree that the hearing took place on December 21, 2016. In its Memorandum Opinion denying Burns's Petition for Writ of Habeas Corpus, the trial court summarized the testimony presented at the preliminary hearing. See Trial Court Opinion, 6/5/17, at 2-5. Relevantly, the trial court's summary of Officer Pfeifer's testimony mirrored Officer Pfeifer's trial testimony, as summarized in the court's Pa.R.A.P. 1925(a) Opinion. See id. at 4-5; Trial Court Opinion, 1/15/18, at 5.

expert. See *Watson*, *supra*. Thus, Burns is not entitled to relief on this claim.

In his sixth and final claim, Burns contends, and the Commonwealth agrees, that the trial court imposed an illegal sentence, because his convictions of homicide by vehicle and involuntary manslaughter should have merged at sentencing. Brief for Appellant at 33-34; Commonwealth's Brief at 24-25.[11]

Because Burns's claim challenges the legality of his sentence, "our standard of review is de novo and our scope of review is plenary." *Commonwealth v. Quinta*, 56 A.3d 399, 400 (Pa. Super. 2012). Merger is prohibited "unless two distinct facts are present: 1) the crimes arise from a single criminal act; and 2) all of the statutory elements of one of the offenses are included in the statutory elements of the other."[12] *Commonwealth v. Baldwin*, 985 A.2d 830, 833 (Pa. 2009); see also 42 Pa.C.S.A. § 9765.

Here, the charges of homicide by vehicle and involuntary manslaughter arose out of the same criminal act, as reflected in the Criminal Information. See Criminal Information, 1/31/17. Additionally, the offenses share elements, and Burns's reckless operation of the truck and air compressor was

_____

[11] Burns did not raise this issue in his Concise Statement. However, challenges to the legality of sentence may not be waived, even where an appellant fails to raise the claim in a Rule 1925(b) concise statement. *Commonwealth v. Hodges*, 193 A.3d 428, 432-33 (Pa. Super. 2018).

[12] The statutory definitions of these offenses are set forth supra.

the cause of the victim's death. Therefore, the offenses of homicide and involuntary manslaughter merge for sentencing purposes. See Commonwealth v. Comer, 716 A.2d 593, 599 (Pa. 1998) (concluding that a prior version of homicide by vehicle—requiring only an unintentional killing as opposed to recklessness or gross negligence—and involuntary manslaughter merged for sentencing purposes, where the appellant's act of reckless driving supported both the recklessness element of involuntary manslaughter, and the element of homicide by vehicle requires a violation of the Code). Because the trial court imposed separate, concurrent sentences for these convictions, we must vacate the sentence imposed for involuntary manslaughter.[13]

Based upon the foregoing, we vacate the sentence imposed for Burns's involuntary manslaughter conviction, and affirm the judgment of sentence in all other respects.

Judgment of sentence affirmed in part, and vacated in part.

_____

[13] We need not remand for resentencing, as the vacation of a concurrent sentence, which includes a prison term of the same length, and a shorter period of probation, will not disrupt the trial court's sentencing scheme. See generally Commonwealth v. Kelly, 78 A.3d 1136, 1138 n.1 (Pa. Super. 2013).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>9/11/2019</u>