J-A22011-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KIYON GRANT, | : | |
| | : | |
| Appellant | : | No. 1258 EDA 2018 |

Appeal from the Judgment of Sentence April 24, 2015
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0012836-2012,
CP-51-CR-0012837-2012

BEFORE: MURRAY, J., STRASSBURGER, J.[*], and PELLEGRINI, J.[*]

MEMORANDUM BY MURRAY, J.: **FILED OCTOBER 25, 2019**

Kiyon Grant (Appellant) appeals from the judgment of sentence imposed after a jury convicted him of two counts of aggravated assault, and one count each of conspiracy to commit aggravated assault, carrying a firearm without a license, carrying a firearm on a public street in Philadelphia, and carrying a firearm as a minor.[1] Appellant challenges the sufficiency of the evidence supporting his firearms convictions. After careful review, we affirm.

The instant matter arose out of a gang-related shooting in the fall of 2011 in the West Philadelphia neighborhood known as "the Bottom." N.T., 1/30/15, at 28. On November 9, 2011, Garren Tyler and Randall Brown (collectively, the Victims) were walking near the intersection of 32nd Street

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2702(a), 903(a), 6106, 6108, 6110.1(a)

and Mt. Vernon Street in Philadelphia. As the Victims approached Mr. Brown's residence, Appellant, his co-defendant, Nafis Pennington,[2] and Jeffrey Johnson shot at the Victims, hitting Mr. Tyler in the ankle and Mr. Brown in the thigh.

On June 29, 2012, Appellant was arrested and charged with two counts of aggravated assault and numerous violations of the Uniform Firearm Act (UFA). A four-day jury trial commenced on January 28, 2015, during which the following testimony was introduced:

> The [c]omplainant, Mr. Garren Tyler (a/k/a/ Ishmael Tyler), testified that on November 9, 2011, he resided in the vicinity of 34th and Wallace Streets, in the area commonly referred to as "the bottom," in the City of Philadelphia. At approximately 8:20 p.m., as he and Mr. Randall Brown walked to Mr. Brown's house, [Appellant] and Jeffrey Johnson, both equipped with dark-colored handguns, began shooting at him and Mr. Brown. Mr. Tyler testified that he was shot once in his left ankle, and heard "Randy" screaming that he was "hit." When asked how many shots were fired, Mr. Tyler testified, "[i]t was a lot, like, ten."
>
> [T]he Commonwealth offered the testimony of Ms. India Tyler, a reluctant Commonwealth witness, through her statement given to Philadelphia Police Detective, Frank Mullen, on June 13, 2012. Her statement was taken by Detective Mullen in the course of his investigation into [another] shooting . . . which occurred on June 11, 2012, six months after the shooting of the [c]omplainant, Garren Tyler.
>
> Ms. Tyler testified that she was Mr. Tyler's cousin and that having lived in the vicinity of 34th and Wallace Streets all her life, she was familiar with the area and [Appellant]. In her statement, Ms. Tyler told Detective Mullen that on the night the complainant was shot

---

[2] The trial court convicted Appellant's co-defendant, Nafis Pennington, of aggravated assault, conspiracy, and related weapons offenses. This Court affirmed his judgment of sentence on February 8, 2017. **See Commonwealth v. Pennington**, 1364 EDA 2015 (Pa. Super. Feb. 8, 2017) (unpublished memorandum).

"I seen [Appellant] pull the gun out and the guy Jeff pulled out a gun, too. I ran away and I heard shots." After seeing their guns, she ran to her grandmother's house "to inform them of what happened." She described [Appellant's] gun as "all black, a newer one, square one . . ." and Jeff's as a "silver 38 revolver."

Philadelphia Police Detective Frank Mullen testified that he was the assigned detective investigating a shooting . . . that occurred on June 11, 2012, for which [Appellant] was a suspect. As part of his investigation, he interviewed India Tyler on June 13, 2012, taking her written statement.

During this interview, Ms. Tyler informed him that she had witnessed the shooting that took place on November 9, 2011. When he asked Ms. Tyler whether she had "ever seen [Appellant] or [his co-defendant] with a gun in the past," and whether she actually saw [Appellant] shoot her cousin, she responded; ". . . Yes, [Appellant], when he shot my cousin Ishmael Tyler, this was last year at 32nd and Mt. Vernon Street. . . I seen [Appellant] pull the gun and the guy Jeff pulled out the gun, too. I ran away and heard shots."

Detective Mullen further testified that on July 1, 2015, he interviewed the co-defendant, Nafis Pennington, a suspect in the June 11, 2012 shooting . . . . During the interview, Mr. Pennington identified Ms. Whitney Kelly, as his "[b]aby's mom." On July 2, 2015, Detective Mullen, based on the information available to him at the time and suspecting that Mr. Pennington may reside with Ms. Kelly, applied for and obtained a search warrant for Ms. Kelly's apartment, which was subsequently executed by the Southwest Detective Division Warrant Unit.

Philadelphia Detective Craig Fife testified that on November 9, 2011, he was working as a detective in the Special Investigations Unit of the Southwest Detectives Division, when he was assigned to investigate the shootings of Mr. Tyler and Mr. Brown. Upon arriving at the scene, Detective Fife located five fired cartridge casings on the corner of 32nd and Mt. Vernon Streets, which he subsequently submitted to the Firearms Identification Unit (FIU) for analysis. He also noticed that a vehicle at the scene had been struck by some gunfire, and he saw blood, which he believed belonged to Randall Brown, splattered in the doorway of 665 North 33rd Street and on the stairs leading into the building.

\* \* \*

[T]he Commonwealth offered the testimony of Mr. Eli Boyd, a reluctant Commonwealth witness, through his statement given to Philadelphia Police Detectives, Antonini and Fife, on June 29, 2012. His statement was taken by the detectives in the course of their investigations into the shootings which occurred on November 9, 2011 and June 11, 2012.

Mr. Boyd testified that he also grew up in the area known as "the bottom" and that he knew the [c]omplainant, Garren Tyler, India Tyler and [Appellant], since childhood. Mr. Boyd told the detectives, "I was walking down 32nd Street and I saw Ishmael and Randy Brown going on . . . Randy's mom's house porch. I then saw one person coming from Wallace and two black males coming from Mt. Vernon. When they got about three car lengths away from Randy and Garren, they opened fire on them . . . I was down the block, looking at the shooting . . . Randy fell and was hit in his legs. Garren tried to run away but was shot in his ankle." He also stated that all three had guns. When asked which direction the shooters ran, he replied, "[o]ne guy ran towards me on 32nd Street, the other two ran the other way . . . all three had black hoodies on." On being shown separate photo arrays by the detectives, Mr. Boyd positively identified [Appellant] as one of the three shooters.

Philadelphia Police Officer Michael Ditizio testified that in June of 2012, he was assigned to the Warrant Unit at Southwest Detectives, and that he executed the search warrant obtained by Detective Mullen for Kelly's apartment . . . . Officer Ditizio testified that the apartment was allegedly occupied by Mr. Nafis Pennington. On executing the warrant, he recovered a black Hi-Point, semi-automatic handgun, loaded with nine live rounds, from a closet in the second floor front bedroom. He also recovered photographs of Mr. Pennington, a Comcast bill addressed to him at that address and a paper receipt indicating the receipt of a payment from Ms. Kelly regarding Mr. Pennington.

Philadelphia Police Officer Norman De[F]ields, a nine year veteran of the [FIU], testified that he compared the five fired cartridge casings recovered (by Detective Fife) from 32nd and Mt. Vernon Streets with the firearm recovered (by Detective Ditizio) from the apartment . . . . He concluded that all five casings had been fired from that firearm.

Trial Court Opinion, 12/21/18, 5-9 (footnotes and record citations omitted).

On February 4, 2015, a jury convicted Appellant of the above charges. The trial court sentenced Appellant to an aggregate term of 13 to 26 years of incarceration, with credit for time served, on April 24, 2015. Appellant did not file post-sentence motions or a direct appeal.

On September 1, 2015, Appellant filed a *pro se* petition for post-conviction relief seeking to have his direct appeal rights reinstated. Counsel was appointed and filed an amended petition of Appellant's behalf. On April 3, 2018, the PCRA court granted Appellant's request and reinstated his direct appeal rights *nunc pro tunc*. This appeal followed. Both the trial court and Appellant have complied with Rule of Appellate Procedure 1925.

Appellant raises two issues for our review:

1. Was the evidence sufficient to convict Appellant of firearms not to be carried without a license (6106), carrying a firearm in public in Philadelphia (6108), [and] possession of a firearm by a minor (6110.1) when the firearm the Appellant was alleged to have used was never recovered and there was no evidence introduced about the length of the firearm the [Appellant] was alleged to have used in order to meet the definition of a firearm?

2. Was the evidence sufficient to convict the Appellant of firearms not to be carried without a license (6101), carrying a firearm in public in Philadelphia (6108), possession of a firearm by a minor (6110.1), and possession of an instrument of crime when there was no physical evidence that [Appellant] ever possessed a firearm?

Appellant's Brief at 4 (suggested answers omitted).

In reviewing sufficiency claims, our standard of review is well settled:

- 5 -

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [finder] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Fabian*, 60 A.3d 146, 150-51 (Pa. Super. 2013) (quoting

*Commonwealth v. Jones*, 886 A.2d 689, 704 (Pa. Super. 2005)).

Appellant contends that his convictions under the Uniform Firearms Act, Section 6106, firearms not to be carried without a license, Section 6108, carrying a firearm on public streets or public property in Philadelphia, and Section 6110.1, possession of a firearm by a minor, are not supported by the evidence. Appellant maintains that the Commonwealth failed to prove beyond a reasonable doubt that Appellant possessed a "firearm" because it did not establish the barrel length or overall length of the gun.

Section 6101, firearms not to be carried without a license, provides in pertinent part:

(a)   Offense defined.—

(1) Except as provided in paragraph (2), any person who carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license under this chapter commits a felony of the third degree.

18 Pa.C.S.A. § 6106(a)(1). The offense of carrying firearms on public streets or public property in Philadelphia, 18 Pa.C.S.A. § 6108, provides:

No person shall carry a firearm, rifle or shotgun at any time upon the public streets or upon any public property in a city of the first class unless:

(1) such person is licensed to carry a firearm; or

(2) such person is exempt from licensing under section 6106(b) of this title (relating to firearms not to be carried without a license).

18 Pa.C.S.A. § 6108. Finally, Section 6110.1, possession of firearm by minor states, in pertinent part:

**(a) Firearm.—**Except as provided in subsection (b), a person under 18 years of age shall not possess or transport a firearm anywhere in this Commonwealth.

18 Pa.C.S.A. § 6110.1(a).

For purposes of Sections 6106, 6108, and 6110.1, a firearm is defined as:

Any pistol or revolver with a barrel length less than 15 inches, any shotgun with a barrel length less than 18 inches or any rifle with a barrel length less than 16 inches, or any pistol, revolver, rifle or shotgun with an overall length of less than 26 inches. The barrel length or a firearm shall be determined by measuring from the muzzle of the barrel to the face of the closed action, bolt or cylinder, whichever is applicable.

18 Pa.C.S.A. § 6102.

Appellant contends that there is insufficient evidence to support his convictions under Section 6106, 6108, and 6110.1 because the "Commonwealth [ ] did not introduce any information about the length [of the gun barrel] from any of the three civilian witnesses it called." Appellant's Brief at 11. In particular, Appellant baldly asserts that "[t]he statements [made at trial] do not even go as far as stating the type of firearm such as shotgun, rifle, or pistol. They just use the generic term 'gun'." *Id.* This claim lacks merit.

Contrary to Appellant's assertions, numerous witnesses consistently described the firearm Appellant used to shoot the Victims as a small gun or handgun. *See* N.T., 1/29/15, at 87, 97, 130-31; N.T., 1/30/15, at 70, 111. Detective Norman DeFields, a supervising officer in the FIU, specifically described Appellant's firearm as having a "three-and-a-half-inch barrel. It was test fired and found operable." N.T., 2/2/15, at 189. Additionally, Detective Craig Fife, who investigated the shooting, and Detective DeFields, each identified the shell casings from the scene as casings from a Hi-Point model C, semiautomatic handgun with a 9-milimeter caliber Luger. N.T., 1/30/15, at 146, 148; N.T., 2/2/15, at 15; N.T., 2/3/15, at 189-91.

As noted above, we view the evidence in the light most favorable to the Commonwealth as verdict winner. *Fabian*, 60 A.3d at 150. After review, we conclude that Detective DeFields' description of Appellant's firearm, in conjunction with the witnesses' description of the firearm as a small handgun,

was sufficient for the jury to conclude that the length of the barrel was less than 15 inches.

In his second issue, Appellant argues that the Commonwealth failed to establish that Appellant possessed a firearm. This claim is also unavailing. It is well-settled that "[p]ossession can be found by proving actual possession, constructive possession, or joint constructive possession." ***Commonwealth v. Heidler***, 741 A.2d 213, 215 (Pa. Super. 1999).

Our review of the record supports the trial court's determination that there was sufficient evidence to establish that Appellant possessed a firearm. Notably, Mr. Tyler identified Appellant as one of the men who shot at him. Specifically, Mr. Tyler testified:

> [MR. TYLER]: When we walked down to 32nd Street, we was crossing Mt. Vernon Street, **that's when I seen Jeffrey and [Appellant] coming down the street.**
>
> [THE COMMONWEALTH]: And who's Jeffrey? Do you know Jeffrey's last name?
>
> [MR. TYLER]: I think – I believe it's Johnson.
>
> [THE COMMONWEALTH]: And who else do you see?
>
> [MR. TYLER]: [Appellant].
>
> *     *     *
>
> [THE COMMONWEALTH]: . . . what happened next?
>
> [MR. TYLER]: So, as we was proceeding down – crossing Mt. Vernon Street, they was coming down kind of fast, he kept walking. And as soon as we – I got, like, to [Mr. Brown's] step, I tried to walk up the step, and when I turned around, that's when I seen the gun drawn.

[THE COMMONWEALTH]: Okay.  What happened?

[MR. TYLER]: That's when I – like, I froze.  I got stuck, and that's when shots – that's when shots started going off.

[THE COMMONWEALTH]: And you said you saw guns, did you see one gun or two guns?

[MR. TYLER]: Two.

**[THE COMMONWEALTH]: Who pulled out the guns?**

**[MR. TYLER]: [Appellant] and Jeffrey.**

N.T., 1/29/15, at 67-69 (emphasis added).  Ms. Tyler also identified Appellant as a shooter and her description of Appellant's weapon is consistent with the Hi-Point pistol recovered from Ms. Kelly's residence.  N.T., 1/30/15, at 38, 67, 70.  Under a sufficiency review, this Court has long-held that eyewitness testimony is sufficient to prove possession of a firearm.  ***See Commonwealth v. Galindes***, 786 A.2d 1004 (Pa. Super. 2001) (evidence sufficient where witness did not see defendant possess firearm but saw accompanying flashes and heard gunshot sounds in witnessing crime).

Moreover, at trial, the jury heard testimony that the crime scene evidence, as analyzed by firearms expert Detective DeFields, involved five fired cartridge casings recovered from the crime scene, and it was "determined that all five of those cartridge casings were fired [from the Hi-Point] pistol." N.T., 2/2/15, at 191.

Viewing the evidence adduced at trial in the light most favorable to the Commonwealth, the jury could reasonably infer that the weapon used by

Appellant to shoot the Victims was the Hi-Point semi-automatic firearm recovered from Ms. Kelly's residence, in violation of 18 Pa.C.S.A. §§ 6106, 6108, and 6110.1. Indeed, in **Commonwealth v. Woodbury**, 477 A.2d 890 (Pa. Super. 1984), we held that possession of a firearm could be established purely on circumstantial evidence. We explained:

> The only evidence in support of the accusation of possession was purely circumstantial. However, once the factfinder concluded that the appellant was the slayer and that the death resulted from the infliction of a gunshot wound, the factfinder could logically have concluded from all of the evidence that appellant had possession of a gun, that the gun was an instrument commonly used for criminal purposes, and that his possession of the gun was, under the circumstances, not manifestly appropriate for any lawful use that the gun may have had. **See Commonwealth v. Keaton**, 419 A.2d 578, 580 (Pa. Super. 1980) (where a conviction for possessing an instrument of crime was upheld based only upon circumstantial evidence and with an absence of any direct evidence of actual physical possession of the weapon). Therefore, appellant's conviction for this offense was grounded upon competent evidence.

**Id.** at 893-94. Accordingly, Appellant's sufficiency claims are without merit.

Judgment of sentence affirmed.

Judge Pellegrini joins the memorandum.

Judge Strassburger files a dissenting memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/25/19

- 11 -